## PEOPLE v BETTISTEA

Docket No. 87225. Submitted June 23, 1987, at Grand Rapids. Decided November 21, 1988.

Following two police undercover operations in June and July of 1984, during which Joseph Albert Bettistea was videotaped as he sold to the undercover officers what they had suspected were stolen power tools and construction equipment, Bettistea was charged as follows: (1) conspiracy to receive and conceal stolen property worth over $100 and receiving and concealing stolen property worth over $100 for the June transaction; and (2) receiving and concealing stolen property worth over $100 for the July transaction. At his arraignment on both informations, Bettistea pled not guilty, waived preliminary examination and indicated that he would retain counsel. The cases were assigned to two different judges of the Kent Circuit Court and bail was set at $5,000, which defendant posted. On the day of trial on the charge relating to the July transaction, defendant appeared

REFERENCES

Am Jur 2d, Appeal and Error §§ 555, 623.5, 776 *et seq.*, 867, 873, 882, 883.

Am Jur 2d, Conspiracy §§ 10 *et seq.*

Am Jur 2d, Continuances § 3.

Am Jur 2d, Criminal Law §§ 984 *et seq.*

Am Jur 2d, Evidence §§ 16 *et seq.*, 250, 269, 927, 928.

Am Jur 2d, Judges §§ 202.

Am Jur 2d, Jury §§ 272, 273.

Am Jur 2d, Receiving and Transporting Stolen Property §§ 19 *et seq.*

Am Jur 2d, Trial § 159.

Admissibility of records other than police reports, under Rule 803(6), Federal Rules of Evidence, providing for business records exception to hearsay rule. 61 ALR Fed 359.

Juror's presence at or participation in trial of criminal case (or related hearing) as groud of disqualification in subsequent criminal case involving same defendant. 6 ALR3d 519.

Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

Disqualification of judge by state, in criminal case, for bias or prejudice. 68 ALR3d 509.

without counsel and requested court-appointed counsel. The court cancelled defendant's bond and reset bail at $15,000. Subsequently, counsel was appointed for defendant, the original bond was reinstated, and, pursuant to stipulation, both cases were remanded for a single preliminary examination. Defendant was bound over for trial following the preliminary examination. A jury trial was set before Stuart Hoffius, J., the judge who had earlier increased defendant's bail. Defendant filed, and the court denied, a motion to have the trial judge disqualify himself. Later, defendant filed, and the court denied, a motion to have the disqualification motion referred to the state court administrator. The jury found defendant guilty of conspiracy, but not guilty of receiving and concealing stolen property, with regard to the June transaction and guilty of receiving and concealing stolen property with regard to the July transaction. Following a jury trial on supplemental informations charging defendant with being an habitual offender, defendant was found to be a fourth time felony offender. Defendant was sentenced to concurrent prison terms of ten to thirty years for the June transaction and 7½ to 30 years for the July transaction. Defendant appealed.

The Court of Appeals *held:*

1. There is no merit to the claim that defendant was denied a fair trial because of prosecutorial misconduct consisting of (1) displaying to the jury certain power tools not offered as exhibits at trial but alleged to be stolen and (2) asking defendant, on cross-examination, to comment on the credibility of a prosecution witness. Defendant did not object to the exhibition of the items and he admitted that he had sold the items. The prosecutor's cross-examination was proper in light of defendant's testimony on direct examination, during which defendant referred to the witness in question as a "liar."

2. Sufficient evidence was presented in support of defendant's conviction for conspiracy to receive and conceal stolen property. The evidence showed that (1) defendant knowingly entered into an agreement with another to commit the crime of receiving and concealing stolen property, (2) he specifically intended to commit or assist in committing the crime, (3) the agreement took place on or before June 20, 1984, and (4) the other person agreed with defendant to commit or assist in committing the crime.

3. The evidence presented at trial supported defendant's conviction for receiving and concealing stolen property with regard to the July transaction.

4. The examining magistrate did not abuse his discretion in

binding defendant over for trial as there was sufficient proof in support of the bindover decision.

5. Defendant's motion for the disqualification of the trial judge and the subsequent motion to have the disqualification question referred to the state court administrator failed to comply with the pertinent court rule, MCR 2.003. The issue of disqualification was therefore not properly preserved for appeal. In any event, the record does not disclose that the trial judge was personally biased against defendant.

6. The trial judge did not abuse his discretion in denying defendant's request for an adjournment of the trial.

7. The trial judge erred in admitting into evidence, under the business records exception to the hearsay rule, a note prepared by an employee of a business entity with regard to tools stolen from that entity. There was no showing, as required by MRE 803(6), that it was the regular practice of that entity to prepare and keep such a note. However, the error was harmless since all persons connected with the note testified and were available for cross-examination and the admission of the note did not affect a substantial right of defendant.

8. The trial judge did not err in permitting a rebuttal witness offered by the prosecution to testify on a matter the prosecution could have presented in its case in chief. The rebuttal testimony was relevant to an issue raised by defendant and on which defendant had offered evidence.

9. With regard to the videotapes, which were destroyed following trial and consequently were not available on appeal: (1) defendant was not denied effective assistance of counsel; (2) defendant, by failing to object to the videotapes' admission at trial, failed to preserve for appeal the claim that the videotapes were more prejudicial than probative; (3) defendant, by failing to raise the issue below, failed to preserve for appeal the claim that the search warrant which authorized the videotaping was overbroad; (4) the destruction of the videotapes does not require reversal of defendant's convictions inasmuch as defendant and his counsel were able to view the videotapes prior to trial, the jury was able to view them at trial and during its deliberations, and material portions of the events videotaped were reflected in the testimony of various witnesses yet defendant was unable to demonstrate any police impropriety occurring during the video-taped transactions.

10. Defendant's right against being placed twice in jeopardy and his right to a jury trial were not violated when an alternate juror, who was on the jury panel during the trial on the underlying felonies but was dismissed before deliberations com-

menced, was allowed to replace a juror on the same panel at the habitual-offender proceedings.

11. The trial judge erred in failing to rule on the merits of the claims raised in defendant's oral motion to quash the supplemental informations on the basis of the alleged invalidity of his prior convictions. On remand, the trial judge shall address the merits of this claim, including the claim that two prior convictions arising out of one criminal episode should be counted as one for habitual offender purposes. Also, the transcripts of the plea proceedings which resulted in defendant's prior convictions shall be made part of the record on remand.

Affirmed in part, reversed in part, and remanded.

1. CRIMINAL LAW — RECEIVING AND CONCEALING STOLEN PROPERTY — EVIDENCE.

In a prosecution for receiving and concealing stolen property, a display before the jury of alleged stolen items not offered and admitted as exhibits, in addition to other alleged stolen items admitted as exhibits, does not result in error where no objection is made by the defendant and the identity and authentication of the items are expressly admitted by the defendant.

2. CRIMINAL LAW — APPEAL — SUFFICIENCY OF EVIDENCE.

In determining whether a conviction was based on sufficient evidence, the test is whether the evidence was such that a rational factfinder could infer guilt beyond a reasonable doubt as to each element of the offense.

3. CONSPIRACY — CRIMINAL LAW.

Criminal conspiracy is a mutual understanding or agreement between two or more persons, express or implied, to do or accomplish some criminal or unlawful act; conspiracy is a crime separate and distinct from the substantive offense; all the requisite elements of the crime of conspiracy are met upon entry by the parties into the mutual agreement, and no overt acts need be established.

4. CRIMINAL LAW — PRELIMINARY EXAMINATION — BINDOVER — APPEAL.

In reviewing an examining magistrate's decision to bind a defendant over for trial, neither the trial court nor the Court of Appeals may substitute its judgment for that of the magistrate, but may reverse only if it appears on the record that there has been an abuse of discretion.

5. JUDGES — DISQUALIFICATION OF TRIAL JUDGE — COURT RULES.

A motion to disqualify a trial judge must be filed within fourteen

days after the moving party discovers the ground for disqualification (MCR 2.003).

6. CRIMINAL LAW — TRIAL — CONTINUANCE.

The grant or denial of a motion for a continuance in a criminal trial rests within the sound discretion of the trial judge (MCL 768.2; MSA 28.1025).

7. EVIDENCE — HEARSAY — BUSINESS RECORDS.

A memorandum may be admitted under the business records exception to the hearsay rule only if such memorandum was kept in the course of a regularly conducted business activity and it was the regular practice of that business activity to make the memorandum (MRE 803[6]).

8. EVIDENCE — REBUTTAL.

Rebuttal is limited to the refutation of relevant and material evidence, that is, evidence bearing on an issue properly raised in a case.

9. EVIDENCE — REBUTTAL — APPEAL.

The admission of rebuttal testimony rests within the sound discretion of the trial judge, and his ruling will not be disturbed absent a clear abuse of discretion.

10. CRIMINAL LAW — APPEAL — ASSISTANCE OF COUNSEL.

Generally, a motion for a new trial is a prerequisite to appellate review of a claim of ineffective assistance of counsel; however, the absence of a motion for new trial or an evidentiary hearing is not fatal to appellate review where the details relating to the alleged deficiencies of the defendant's trial counsel are sufficiently contained in the record to permit the Court of Appeals to reach and decide the issue.

11. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

The standard to determine whether a defendant had effective assistance of counsel in a criminal trial is that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law, and, secondly, counsel must not make a mistake such that there would have been a great likelihood that the defendant would not have been convicted but for the mistake.

12. CRIMINAL LAW — APPEAL — CONSTITUTIONAL LAW.

The Court of Appeals, when addressing a constitutional question not raised by a defendant in the trial court, must determine if the alleged constitutional error was decisive to the outcome of

the case; if the alleged error is thought to be decisive, the defendant may raise the issue on appeal.

13. CRIMINAL LAW — EVIDENCE — DESTRUCTION OF EVIDENCE.

The destruction following trial of a videotape of a police undercover operation offered as evidence in a criminal prosecution does not deny the defendant his right of appeal or require reversal of his conviction where the jury was able to view the videotape during trial and deliberations, the defendant and his counsel had opportunities to view the videotape prior to trial and to question prosecution witnesses thereon, and defendant does not allege any improprieties occurring during the videotaped transaction despite the fact that material portions of the videotaped transaction were related on the record by testifying witnesses.

14. CRIMINAL LAW — JURY TRIAL — HABITUAL OFFENDER PROCEEDINGS — ALTERNATE JURORS.

In a jury trial on a supplemental habitual offender charge, no error results in allowing an alternate juror who was dismissed prior to deliberations in the trial resulting in conviction on the underlying criminal offense to serve in place of one of the jurors on the jury panel deciding both charges.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, *Timothy K. McMorrow*, Chief Appellate Attorney, and *Carol Bucher*, Assistant Prosecuting Attorney, for the people.

*George S. Buth*, and *Gary P. White*, for defendant on appeal.

Before: WAHLS, P.J., and MAHER and T. K. BOYLE,* JJ.

T. K. BOYLE, J. On January 28, 1985, following a consolidation of two cases against defendant in the Kent Circuit Court, defendant was found guilty by a jury of several offenses arising from his participation in two separate criminal episodes. In case

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

one, defendant was found guilty of conspiracy to receive and conceal stolen property worth over $100, MCL 750.157a, 750.535; MSA 28.354(1), 28.803, but not guilty of receiving and concealing stolen property worth over $100. In case two, defendant was convicted of receiving and concealing stolen property worth over $100. Following a jury trial on habitual offender supplemental informations, defendant was also found guilty of being a fourth time felony offender in both cases. MCL 769.12, 769.13; MSA 28.1084, 28.1085. For his convictions, defendant was sentenced to 10 to 30 years in prison in case one and 7½ to 30 years in prison in case two, the sentences to be served concurrently.

Defendant brings his appeal as of right.

On June 20, 1984, defendant and John Doe, an unidentified white male, sold various power tools to an undercover police officer in a "sting operation." Defendant received $155 for the items and John Doe received $125. On July 11, 1984, defendant, acting alone, sold additional items to the undercover officer, for which he received $175. Both of the sales were videotaped by the police and the items were thought to be stolen. For the June 20 sale, defendant was arrested and charged with conspiracy to receive and conceal stolen property worth over $100, and receiving and concealing stolen property worth over $100. For the July 11 sale, defendant was charged with receiving and concealing stolen property worth over $100. Supplemental informations were also filed against defendant in both cases charging him as a fourth-time felony offender.

At defendant's arraignment, he pled not guilty. He also waived his right to a preliminary examination and stated that he would hire his own counsel. Bail was set at $5,000 and defendant was

released after posting that amount. The cases were assigned to two different circuit judges.

Trial in case number two was scheduled for November 5, 1984. On the morning of trial, defendant appeared without counsel and stated that he was unable to obtain funds to hire an attorney and requested that counsel be appointed. Noting that defendant had unnecessarily caused the trial to be delayed, the judge cancelled defendant's bond and reset it at $15,000. Defendant was apparently unable to raise that amount and was remanded to the Kent County Jail.

On November 7, 1984, counsel was appointed for defendant. Three weeks later, his attorney moved for, and was granted, reinstatement of the original bail. Defendant was released from the county jail.

Thereafter, pursuant to stipulated orders, both circuit judges remanded their cases for a single preliminary examination. The examination was held on December 13, 1984. The prosecution's proofs included testimony from Grand Rapids Police Detective Robert Ungrey and Russell Vander Weide, owner of a local construction company. Ungrey related the details of the police sting operation where defendant, on two different occasions, sold allegedly stolen power tools and construction equipment to Ungrey. Ungrey also indicated that the illegal sales had been videotaped by the police. Vander Weide identified several items as belonging to his company and appraised the value of those items. Defendant was bound over for trial.

On January 11, 1985, defendant moved to have the trial judge disqualify himself. The motion alleged that the judge was prejudiced against defendant because of his summary revocation of defendant's bail. By an order dated January 23, 1985, that motion was denied.

On January 11, 1985, defense counsel moved for a transcript of the audio portion of the videotapes made at the sting operation. The judge was initially inclined to grant the motion and encouraged the prosecutor to provide the transcripts. However, when the prosecutor later opposed the motion because of difficulty in transcribing the tapes, Judge Hoffius denied defendant's request. Both defendant and defense counsel had viewed the videotapes, however.

Before the jury was impaneled on January 23, 1985, defense counsel moved to dismiss case number two against defendant, alleging there was insufficient evidence at the preliminary examination to warrant a bindover.

Defense counsel then moved to (1) consolidate the two cases against defendant, (2) have the prosecutor produce transcripts of the videotapes, (3) refer the disqualification motion, which was earlier denied, to the state court administrator, and (4) adjourn the case until those matters were resolved. The motion to consolidate was granted and the other motions were denied. With regard to the disqualification motion, the judge stated that it was not timely filed and was just another means to obtain an adjournment. Thereafter, the trial began. Additional facts will be stated in the discussion of the issues raised by defendant.

I

WAS DEFENDANT DENIED A FAIR TRIAL BECAUSE OF ALLEGED PROSECUTORIAL MISCONDUCT?

Defendant contends on appeal that the prosecutor engaged in misconduct depriving him of a fair trial on two grounds:

First, defendant contends that certain items

were displayed to the jury and referred to in argument by the prosecutor as stolen even though such items were not offered or admitted as evidence in the case.

In the transaction of June 20, 1984, defendant and a second person sold to an undercover police officer a Porta Band saw, an Echo chain saw, a Skil drill, a circular saw, and a Skil 7¼" circular saw. These items were placed in a pile in the courtroom and only one item, the Porta Band saw, was marked, and offered and received into evidence as Exhibit 1.

The price for all objects was $280 with defendant receiving $155 and the second person receiving $125.

In the transaction of July 11, 1984, defendant, acting alone, sold to an undercover police officer a portable air compressor, a pipe holder and a beveler, a hot box pipe bender, a Milwaukee circular saw, and a belt sander.

Defendant was paid $175 for all items. The items were placed in a separate pile, and the air compressor was marked as Exhibit 2, the pipe beveler as Exhibit 3, and the pipe bender as Exhibit 4. The remaining items from the July 11 transaction were not marked.

No objection was made to the exhibition of any item in the courtroom. In addition, both sides in the trial referred to the piles of items and the individual items within each pile throughout the trial. The individual items in each pile were authenticated as having been sold on the respective dates in question. Defendant does not contest that the items were sold by him on the respective dates; to the contrary he concedes the sale of the items and offered evidence as to the source of some items.

Perhaps it would have been better procedure to

have marked each item and to have moved for its admission into evidence. However, as here, where the identity and authentication of the items are not only uncontested but admitted expressly and where the evidence is clearly relevant to each transaction resulting in criminal charges, there was clearly no error in exhibiting these items in the courtroom. See *People v Rozewicz,* 228 Mich 231, 235-237; 199 NW 632 (1924); *People v James,* 36 Mich App 550, 556; 194 NW2d 57 (1971).

Second, misconduct is alleged under *People v Buckey,* 424 Mich 1, 17; 378 NW2d 432 (1985), reh den 424 Mich 1205 (1986), in that the prosecutor, on cross-examination of defendant, questioned him regarding whether a prosecution witness had lied in his testimony.

While it is correct that such cross-examination occurred, no error can be predicated thereon for several reasons. No objection was made to the questions, and the failure to object precludes appellate review. *People v Jancar,* 140 Mich App 222, 223; 363 NW2d 455 (1985).

Moreover, even were the issue properly preserved, no error occurred. The questioning was brief and was limited to two areas on which defendant had testified on direct examination. On direct examination, in response to a question by defense counsel, defendant testified that the prosecution witness was a liar. Clearly, once that door was opened, cross-examination on the subject was proper. See *People v Jansson,* 116 Mich App 674, 692-693; 323 NW2d 508 (1982).

There was no prosecutorial misconduct in this trial.

## II

### WAS THERE SUFFICIENT EVIDENCE TO FIND
### DEFENDANT GUILTY OF CONSPIRACY TO RECEIVE AND
### CONCEAL STOLEN PROPERTY WORTH OVER $100?

Defendant contends that the evidence was insufficient to convict him of conspiracy to receive and conceal stolen property over the value of $100 in the June 20, 1984, transaction.

The test is whether the evidence was such that a rational factfinder could infer guilt beyond a reasonable doubt as to each element of the offense. *Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979); *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den 499 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980).

Defendant argues that the jury acquitted him of the substantive offense of receiving and concealing the Porta Band saw, that no other items in the June 20 transaction were received into evidence or proved to be stolen, that the Porta Band saw was never proved to be stolen, and that, as a result, the conspiracy conviction must fail.

A criminal conspiracy is a mutual understanding or agreement between two or more persons, expressed or implied, to do or accomplish a criminal or unlawful act. It is a crime separate and apart from the substantive offense. The elements of a conspiracy are satisfied immediately upon entry by the parties into a mutual agreement; no overt acts need be established. *People v Atley,* 392 Mich 298, 310-311; 220 NW2d 465 (1974); *People v Hamp,* 110 Mich App 92, 102-103; 312 NW2d 175 (1981), lv den 417 Mich 1053 (1983). In the context of the instant case, proof of a conspiracy to receive and conceal stolen property worth over $100 required a showing that (1) defendant knowingly

entered into an agreement to commit that crime, (2) he specifically intended to commit or assist in committing the crime, (3) the agreement took place on or before June 20, 1984, and (4) during this time, John Doe, the second person, agreed with defendant to commit or assist in committing the crime.

On appeal, defendant does not challenge his conviction on the agreement element. Rather, he argues that there was insufficient evidence to prove the property in question was stolen and, therefore, it was legally impossible to commit the crime charged (i.e., one cannot be guilty of conspiring to do something which is not unlawful). See *People v Tinskey,* 394 Mich 108; 228 NW2d 782 (1975).

The issue whether the Porta Band saw was stolen, that is, its identification, was contested. However, at least three prosecution witnesses gave evidence on the identification of Exhibit 1. This was a question of fact for the jury, and the evidence was sufficient for a jury to find that this particular exhibit was stolen as the prosecution claims.

The issue of its value, that is, the value of Exhibit 1, was contested, but there was sufficient evidence for a trier of fact to find value in excess of $100.

Moreover, there was ample direct and circumstantial evidence of the concert of action and agreement between the second person and defendant. Clearly the evidence was sufficient under the corpus delicti rule to admit evidence of defendant's admission that all the property in the June 20 transaction was stolen. In addition, the admission, as well as the statement of the coconspirator, was clearly admissible under MRE 801(d)(2)(E) as one made in the furtherance of a conspiracy. Both

conspirators admitted that all five items were stolen.

Finally, the circumstantial evidence growing out of the nature of the sale transaction and the fact that serial numbers on items had been removed or obliterated was substantial. Defendant on direct examination testified as follows:

> I don't know if it's stolen or not.
> As to the source of an item, "I don't know."
> As to statements made by the person from whom an item is received, "I don't ask."

On cross-examination, defendant explained why he drilled out serial numbers: "Anything that I get that I don't buy personally myself out of a store, that's what I do to it. I take them off."

Asked why, defendant responded: "Because I don't know if something's legal or ain't."

Based on the evidence presented to the jury on the June 20 transaction, including a videotape of the sale transaction by defendant and the second person which was recorded pursuant to a search warrant, a verdict of guilty of conspiracy and guilty of receiving and concealing stolen property worth over $100 would have been constitutionally supportable.

The jury chose to acquit on the receiving and concealing count. It obviously had a reasonable doubt on some element, perhaps value.

Nevertheless, the evidence supporting the conspiracy verdict was clearly sufficient.

If the evidence is limited to the Porta Band saw (Exhibit 1), it would nevertheless be sufficient. Moreover, the evidence is not so limited. All five items sold in the transaction by defendant and the second person could properly be considered by the jury as bearing upon the charge of conspiracy.

III

WAS THERE SUFFICIENT EVIDENCE TO FIND
DEFENDANT GUILTY OF RECEIVING AND CONCEALING
STOLEN PROPERTY FOR HIS INVOLVEMENT IN THE
JULY 11 SALES TRANSACTION?

Defendant contends the evidence was not sufficient to find him guilty of receiving and concealing based on the July 11 transaction.

The information originally charged receiving and concealing a portable air compressor and a pipe holder and a "benter." The information was amended without objection to change the word "benter" to "bevelor."

On appeal, defendant attempts to limit the evidence at trial supporting the conviction to the air compressor alone, claiming its value as over $100 was never established and that amendment should not have been allowed.

The failure to object to the amendment of the information waives any error. *People v Prather,* 121 Mich App 324, 333; 328 NW2d 556 (1982).

Moreover, if an objection had been made, it should have been overruled. See MCL 767.76; MSA 28.1016; *People v Bruce,* 35 Mich App 358, 359; 192 NW2d 634 (1971), lv den 387 Mich 788 (1972); *People v Covington,* 132 Mich App 79, 86; 346 NW2d 903 (1984), lv den 419 Mich 917 (1984).

There clearly was ample evidence identifying people's Exhibits 2, 3 and 4 as being stolen and as having a value exceeding $100.

The evidence was sufficient to support the verdict of the jury concerning the July 11 transaction.

IV

WAS THERE SUFFICIENT EVIDENCE AT DEFENDANT'S
PRELIMINARY EXAMINATION TO BIND HIM OVER FOR
TRIAL?

Defendant contends that the bindover to circuit court was defective because the evidence at preliminary examination was insufficient essentially in that the precise items claimed to have been stolen were not identified as such in the form of exhibits at the examination.

In reviewing a magistrate's decision to bind over, neither the trial court nor this Court may substitute its judgment for that of the magistrate, but may reverse only if it appears on the record that there has been an abuse of discretion. *People v Talley,* 410 Mich 378, 385; 301 NW2d 809 (1981). In the instant case, there was no such abuse of discretion.

At defendant's preliminary examination, there was evidence that both defendant and John Doe told the buyer that the items were "hot." There was evidence that the Porta Band saw was reported stolen from Vander Weide Plumbing. Russell Vander Weide testified that he had identified the Porta Band saw, the air compressor, and the pipe bevelor in the police lockup room and that those items belonged to his company. Simply because the items were not identified by serial number or, in the case of the air compressor and pipe bevelor, by brand name, this should not render the bindover invalid. See *People v Whalen,* 80 Mich App 133, 135; 263 NW2d 34 (1977). Here, there was sufficient proof to believe that the goods in question had been stolen and that defendant had received and concealed those goods.

v

WAS DEFENDANT DENIED A FAIR TRIAL BECAUSE THE
TRIAL JUDGE DECLINED TO DISQUALIFY HIMSELF OR TO
REFER THE MATTER TO THE STATE COURT
ADMINISTRATOR?

Defendant next contends that the failure of the trial judge to disqualify himself or to refer the matter to the state court administrator denied defendant a fair trial.

After the bindover in case two a pretrial conference was held on August 24, 1984. Defendant had indicated that he would retain counsel, but, at that time, he had not done so, and he was advised of his trial date of November 5, 1984, and that, if he was unable to retain counsel, appointed counsel should be sought in advance of the date of trial.

Meanwhile, the other case was proceeding before a different circuit judge and a trial date of December 4, 1984, had been set.

On the day of trial in case two, defendant appeared without counsel stating to the court that he had learned within the last few days that he would be unable to secure the funds to retain counsel.

The case was adjourned and bond was raised from $5,000 to $15,000.

Ultimately, counsel was appointed, case one was adjourned as well, and both cases were remanded for the holding of preliminary examinations.

Appointed counsel moved for reinstatement of the original bond, and on December 5, 1984, the motion was granted.

On January 11, 1985, a motion to disqualify the trial judge based on the assertion that he was personally biased against the defendant because he had raised his bond was heard and denied. No

affidavit accompanied the motion, and there was no request for a referral to the state court administrator.

On January 23, 1985, the date of trial, defense counsel orally moved for referral of the denial of his motion for disqualification.

The judge briefly reviewed the history of the case and ruled that both the motion to disqualify and the motion for referral to the state court administrator were untimely and simply another means of procuring adjournments.

MCR 2.003 sets forth the grounds and procedure for disqualifying a judge. Defendant's motion for disqualification was defective for two reasons. First, it was untimely. The rule in subsection (C)(1) expressly contemplates avoiding delay in trial and requires filing within fourteen days after discovery of a ground for disqualification.

The only ground for disqualification was the raising of bond, known to the defendant on November 5, 1984, knowable by defense counsel as of November 7, 1984, the date of his appointment, and actually known on November 28, 1984, by defense counsel since a motion for reinstatement of the original bond was filed on that date. The motion was untimely.

Second, no affidavit accompanied the motion.

Finally, no request for referral to the state court administrator was made until orally made on January 23, 1985, while the jury was waiting to be impaneled.

The issue whether disqualification was properly decided is not preserved for appellate review because the motion was defective under the court rules. However, even had such issue been properly preserved, the verdict in this case could only be set aside if the decision to deny disqualification was

error. Even if the raising of the bond was improper, an issue we are not called upon to decide, the entire record in this case does not contain any basis to support the claim that the trial judge was personally biased.

The defendant was not denied a fair trial because the trial judge refused to disqualify himself.

VI

WAS DEFENDANT DENIED EFFECTIVE ASSISTANCE OF
COUNSEL AND DUE PROCESS OF LAW BECAUSE THE
TRIAL COURT DENIED HIS MOTION FOR A
CONTINUANCE?

Defendant claims he was denied effective assistance of counsel and due process of law by the denial of his request for an adjournment of the trial on January 23, 1985.

This matter is governed by MCL 768.2; MSA 28.1025. Strict necessity and avoidance of manifest injustice is the test.

The court granted relief to the defendant in part and denied it in part. No prejudice based on the rulings of the court was demonstrated.

Moreover, while the power to grant or refuse a continuance is within the sound discretion of the trial judge, *People v Wilson,* 397 Mich 76; 243 NW2d 257 (1976), no abuse of that discretion occurred in this case.

VII

WAS PEOPLE'S EXHIBIT 7 ERRONEOUSLY ADMITTED
INTO EVIDENCE UNDER THE "BUSINESS RECORD"
EXCEPTION TO THE HEARSAY RULE?

Defendant contends that a writing was erroneously admitted into evidence under the business records exception to the rule against hearsay.

During the trial, the court admitted into evidence, as exhibit 7, a note prepared by Mr. Weemhoff at the direction of Mr. VanTuinen detailing certain property which had been stolen from Vander Weide Plumbing.

The exhibit was admitted during Russell Vander Weide's testimony.

The business records exception, MRE 803(6), allows admission of such memoranda, but only "if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorand[a] . . . ." See also *Central Fabricators, Inc v Big Dutchman Division of U S Industries, Inc*, 398 Mich 352, 358-359; 247 NW2d 804(1976).

The record indicates that it was not the regular practice of the business activity to make the memorandum. Admission of the exhibit was error.

However, all persons in any way connected with the memorandum testified and were available for cross-examination and confrontation. Admission of the exhibit was, at worst, harmless error. Admission of the note did not affect a substantial right of defendant. MRE 103(a); MCR 2.613(A).

### VIII

### DID THE TRIAL COURT ERR IN PERMITTING A PROSECUTION WITNESS TO TESTIFY AS A REBUTTAL WITNESS?

Defendant next contends that a rebuttal witness was allowed to testify on a matter which would have been proper in the people's case in chief.

The undercover officer had testified that defendant told him that the tools had been stolen from Van Dyken Heating Company. In fact, the tools had been stolen from Vander Weide Plumbing.

On direct examination of defendant by defense counsel, this conversation was denied.

On rebuttal, a witness was called to prove that trailers from both companies were parked at the construction site within three feet of one another and that the Van Dyken company name was prominently displayed.

While this testimony could have been offered in the case in chief, that is not the test. Rebuttal is limited to the refutation of relevant and material evidence, that is, evidence bearing on an issue properly raised in a case. *People v Bennett,* 393 Mich 445, 449; 224 NW2d 840 (1975). Its relevance should be tested by whether it is justified by the evidence which it is offered to rebut. *Nolte v Port Huron Area School Dist Bd of Ed,* 152 Mich App 637, 644-645; 394 NW2d 54 (1986).

In the final analysis, admission of rebuttal testimony rests within the sound discretion of the trial judge, and his ruling will not be disturbed absent a clear abuse of discretion.

On direct examination, defendant denied telling the undercover officer that the items were stolen or that they came from Van Dyken Heating. He testified that the officer was a liar.

The rebuttal testimony was properly admitted.

## IX

### WAS DEFENDANT DENIED HIS RIGHT TO APPEAL BECAUSE THE VIDEOTAPES OF THE SALES TRANSACTIONS WERE DESTROYED FOLLOWING TRIAL?

Defendant claims his right to appeal has been denied because the videotapes of the two sales transactions were destroyed after trial.

Defendant actually raises four separate objections pertaining to the videotapes: First, that he

was denied the effective assistance of counsel because his trial attorney failed to move to suppress the videotapes; second, that the tapes were more prejudicial than probative and, therefore, should have been excluded from evidence; third, that the search warrant was unconstitutionally overbroad; and fourth, that the police acted in bad faith in destroying the tapes, thus denying defendant his right to appeal. Each of those arguments will be discussed separately below.

a. *Effective Assistance of Counsel*

Initially, it should be pointed out that defendant did not file a motion for a new trial prior to bringing this appeal. Generally, a motion for a new trial is a prerequisite to appellate review of a claim of ineffective assistance of counsel where a testimonial record is needed to review defendant's claim. *People v Ginther,* 390 Mich 436, 442-443; 212 NW2d 922 (1973); *People v Lawson,* 124 Mich App 371, 373; 335 NW2d 43 (1983). However, where such a testimonial record is unnecessary, the absence of a motion for a new trial or an evidentiary hearing is not fatal to appellate review where the details relating to the defense counsel's alleged errors are sufficiently contained in the record to permit the appellate court to reach and decide the issue. *Ginther, supra;* see also *People v Cicotte,* 133 Mich App 630, 636; 349 NW2d 167 (1984). Because defendant did not move for a new trial, this Court's review of his claim should be limited to the present record.

Defendant challenges the effectiveness of trial counsel only on the basis of the Michigan Constitution. He does not claim ineffectiveness under the federal standard. The test to determine whether a defendant had effective assistance of counsel under the Michigan Constitution is bifurcated. First, defendant's counsel must perform at least as well as

a lawyer with ordinary training and skill in the criminal law and must conscientiously protect the defendant's interest, undeflected by conflicting considerations. *People v Garcia,* 398 Mich 250, 264-266; 247 NW2d 547 (1976), reh den 399 Mich 1041 (1977) (quoting *Beasley v United States,* 491 F2d 687, 696 [CA 6, 1974]). Second, counsel must not make a serious mistake but for which the defendant would have had a reasonably likely chance of acquittal. *Garcia, supra; People v Juarez,* 158 Mich App 66, 72; 404 NW2d 222 (1987); *People v Degraffenreid,* 19 Mich App 702, 715-716; 173 NW2d 317 (1969).

Although Michigan affords a defendant protection greater than that under the federal standard (*Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 [1984]), it is unnecessary to resolve which standard governs in this case because the claim would fail under either standard. There is a presumption that trial counsel afforded a defendant effective representation. *People v Tranchida,* 131 Mich App 446, 449; 346 NW2d 338 (1984). And, the burden of proving ineffective assistance of counsel is on the defendant. *Ginther, supra* at 442-443.

There was no motion to suppress the tape at trial, and there is no basis offered on appeal which would have caused suppression. There is no showing of constitutional incompetence. There is no showing of prejudice. There is no showing of any mistake which would render the trial unfair or the verdict suspect. Defendant failed to sustain his burden of proving ineffective assistance of counsel under any standard.

b. *Prejudicial Effect Versus Probative Value*

Because defendant did not object to the admission of the videotapes into evidence, the matter should be considered waived. MRE 103(a)(1).

c. *Search Warrant Overbroad*

Although defendant did not object to the over-breadth of the warrant at trial, it has been held that, where a defendant raises a constitutional question for the first time on appeal, this Court must determine if the alleged constitutional error was decisive to the outcome of the case. If the alleged error is thought to be decisive, a defendant may raise the issue on appeal notwithstanding a somewhat less than complete record. *People v Davis,* 122 Mich App 597, 609; 333 NW2d 99 (1983); *People v Merchant,* 86 Mich App 355, 358; 272 NW2d 656 (1978). Defendant does not have a legitimate claim against the scope of the videotaping activities. Defendant's constitutional rights were not violated because he had no reasonable expectation of privacy even assuming the warrant was overbroad. US Const, Am IV; Const 1963, art 1, § 11; *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967); *People v Clark,* 133 Mich App 619, 625-627; 350 NW2d 754 (1983).

d. *Destruction of Videotapes*

The general rule is that the destruction of evidence before a defense request for such evidence does not mandate reversal where the evidence was not shown to be either favorable or material to the defendant's case and its destruction was not motivated by bad faith on the part of the police. *People v Gibson,* 115 Mich App 622, 628; 321 NW2d 749 (1982), lv den 414 Mich 889 (1982); *People v Oliver,* 111 Mich App 734, 744-745; 314 NW2d 740 (1981), lv den 414 Mich 970 (1982). That rule seems to address itself only to situations where the evidence is destroyed prior to trial (or, more specifically, before the trier of fact has an opportunity to review it).

In the instant case, the jury was able to view the

tapes both during the trial and during deliberations. Therefore, policy arguments which might otherwise prompt reversal where potentially favorable evidence is withheld from the jury do not apply to the case as bar. Furthermore, both defense counsel and defendant had opportunities to view the tapes prior to trial and to question the various prosecution witnesses thereon. Despite the fact that the material portions of the videotapes were placed on the record, either through the questions of counsel or the testimony of witnesses, defendant has not pointed out on appeal any improprieties occurring during the sales transactions. Thus, the destruction of the videotapes should not serve as a basis for reversing defendant's convictions.

X

WAS DEFENDANT PLACED IN DOUBLE JEOPARDY
BECAUSE THE TRIAL COURT RECALLED A PREVIOUSLY
DISMISSED JUROR FOR TRIAL ON THE SUPPLEMENTAL
INFORMATIONS?

Defendant contends his right not to be twice placed in jeopardy was violated.

Thirteen jurors were impaneled to hear the cases against defendant. All thirteen sat through the proofs and were given instructions by the court. Prior to deliberations, Juror 13 was excused and given the following instructions:

Mrs. Davis, you are excused. Will you please go to the jury room and sign out, and then leave immediately. Don't discuss it with the jury. Do not discuss it with your family or friends, because if something should happen to one of these jurors, if they should become ill or not be able to deliberate, why, we would feel free to call you back in. Thank you very much for sitting through this case.

Defense counsel did not object to that instruction. The remaining twelve jurors then began deliberating and subsequently rendered verdicts against defendant. The court instructed those jurors to return on a later day to try defendant on the supplemental informations. On January 30, 1985, the jury was reconvened to hear the supplemental informations. Because one of the twelve jurors could not return due to illness, Juror 13 was called to service. No objections were made.

Defendant now argues that recalling the thirteenth juror placed him in double jeopardy and requires reversing his habitual offender convictions. This argument is without merit.

The constitutional prohibition against double jeopardy consists of three separate guarantees protecting the accused against (1) a second criminal prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969); *People v Alvin Johnson;* 396 Mich 424, 430, n 2; 240 NW2d 729 (1976), reh den 396 Mich 992 (1976), cert den 429 US 951; 97 S Ct 370; 50 L Ed 2d 319 (1976); *People v Gibbs,* 120 Mich App 485, 492-493; 328 NW2d 65 (1982). None of those three situations occurs in the instant case. Moreover, defendant's failure to object to the trial court's recall of Juror 13 should waive any error. Generally, constitutional challenges may not be raised for the first time on appeal. However, appellate review is appropriate if resolution of the constitutional issue is decisive to the outcome of the case. *People v Brown,* 120 Mich App 765, 774-775; 328 NW2d 380 (1982); *Merchant, supra* at 358. Here, it is difficult to discern how the court's recalling of Juror 13 was decisive to the outcome of the case.

That juror was present throughout the proofs and was instructed by the court. Considering that she was told by the court not to discuss the case with anyone, the fact that she had been previously dismissed is no more prejudicial to defendant's case than the fact that the other jurors were dismissed for several days pending the trial on the supplemental information.

Clearly, there is no violation of defendant's right against being placed twice in jeopardy.

The more nearly germane question not raised in either the trial court or in the briefs before this Court is whether defendant's right to trial by jury was violated.

Prior to 1970, there was a widespread assumption that the United States Constitution required a unanimous verdict by a jury of twelve persons. In *Williams v Florida,* 399 US 78; 90 S Ct 1893; 26 L Ed 2d 446 (1970), the Supreme Court ruled that a jury of twelve was not constitutionally required. In *Apodaca v Oregon,* 406 US 404; 92 S Ct 1628; 32 L Ed 2d 184 (1972), the Court ruled that unanimity was not required for jury verdicts in state criminal trials.

The Constitution does place limits on numbers. See *Ballew v Georgia,* 435 US 223; 98 S Ct 1029; 55 L Ed 2d 234 (1978) (five-member jury insufficient), and *Burch v Louisiana,* 441 US 130; 99 S Ct 1623; 60 L Ed 2d 96 (1979) (holding unlawful nonunanimous verdicts by six-member juries).

In *United States v Stratton,* 779 F2d 820 (CA 2, 1985), the trial judge, upon a juror's insistence upon not deliberating during a Jewish holiday period, and upon defendant's refusal to allow a reconstituted jury of twelve including an alternate and refusing to stipulate to accept a verdict from an eleven-member jury, excused the juror and later accepted the verdict from the eleven-member

jury. The conviction was affirmed, the Court holding there was no constitutional impediment and relying upon amended FR Crim P 23(b) (amended in 1983).

In *United States v Hillard,* 701 F2d 1052 (CA 2, 1983), cert den 461 US 958; 103 S Ct 2431; 77 L Ed 2d 1318 (1983), a jury had deliberated for 2½ days followed by a 3-day holiday recess at which time a juror became ill. Defense counsel refused to stipulate to an eleven-member jury and objected to an adjournment for the illness. FR Crim P 24(c) requires the discharge of alternates once the jury begins its deliberations. Over defense objection, the trial judge reconstituted the jury by including an alternate. The jury conviction was upheld, the Second Circuit ruling that there was no violation of defendant's right to jury trial and that the clear violation of Rule 24(c), while error, did not require reversal per se absent a showing of prejudice. *Hillard, supra* at 1054-1061, is instructive in discussing the entire background of the constitutional claim and the claim under the court rule.

In Michigan, old law requires a jury of twelve. *People v Luby,* 56 Mich 551; 23 NW 218 (1885). MCR 6.102(A) requires that alternate jurors be discharged after the twelve-person jury retires to consider its verdict. No error occurred in receiving the original verdicts on January 28, 1985.

The issue is whether error occurred when the court summoned back for service at the habitual offender phase of the trial an alternate juror to replace one of the twelve jurors.

Clearly, based on the cases discussed above, there is no constitutional claim. If error occurred, it must be predicated upon a violation of the court rule or the absence of statutory authority in the judge to so proceed.

No objection was made at the time to the proce-

dure employed. The error, if any occurred, is clearly harmless, and no prejudice is asserted or demonstrated. The defendant has no right to appellate relief on the basis of this claim.

## XI
### SHOULD DEFENDANT'S HABITUAL OFFENDER CONVICTIONS BE REVERSED BECAUSE THE UNDERLYING FELONY CONVICTIONS WERE ALLEGEDLY INVALID?

Defendant last contends that the convictions for habitual offender must be reversed because his underlying felony convictions were invalid.

A motion to quash the supplemental information was filed on January 15, 1985, one week before trial. Argument on the motion occurred the morning of January 30, 1985, the date set for the continuation of the habitual offender phase of the bifurcated trial.

Defendant's three prior felony convictions and the attacks thereon were as follows:

1. A guilty plea to larceny in a building entered on June 20, 1973, and attacked on the basis that the defendant was not personally questioned regarding whether his plea was voluntary.

2. A guilty plea to absconding on bond entered before a different judge but on the same date, June 20, 1973, and attacked on the basis that the judge failed to name the offense to which defendant was pleading; and

3. A guilty plea to attempted larceny in a building entered on May 16, 1977, and attacked on the basis that the judge failed to obtain from defendant a factual recitation in support of the plea.

The prosecutor argued that all constitutional rights were honored and that the guilty pleas were valid.

The court ruled as follows:

> Thank you. I have not read the transcript, but I am of the opinion that the motion should be denied. This is the morning of the continuation of the trial, and I assume that he was advised of his rights of appeal and either took the appeal or the appeal was unsuccessful, and he was represented by counsel in all three instances, and accordingly, the motion is respectfully denied.

Defense counsel immediately cited *People v Crawford,* 417 Mich 607; 339 NW2d 630 (1983), and argued that the prior convictions could be collaterally attacked in the recidivist proceeding.

On appeal, defendant raises several attacks on the validity of the underlying convictions, most of which will not be recited or resolved because they were not argued below and are not preserved for appeal.

The prosecutor counters that defendant made no motion for a continuance and now attacks the validity of the underlying convictions without any record basis since the transcripts of the guilty pleas are not part of this record, citing the court rule, now MCR 7.210(A)(1).

In *Crawford, supra* at 613 and 614, n 14, our Supreme Court stated, in dicta, that a *Boykin-Jaworski* [*Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 25 L Ed 2d 274 (1969); *People v Jaworski,* 387 Mich 21; 194 NW2d 868 (1972)] defective plea cannot be used to supplement a charge in habitual offender proceedings and that such a defective conviction may be challenged by a timely motion to quash the supplemental information.

In light of the time frame of legal proceedings in these two cases, given the date of appointment of counsel, the motion to quash filed on January 15, 1985, cannot be called untimely.

The trial judge denied the motion without reviewing the transcript or transcripts of the pleas, essentially ruling that the pleas were valid unless and until ruled invalid on direct appeal.

Clearly, if such ruling were applied to an uncounseled guilty plea, it would be error. *Burgett v Texas*, 389 US 109; 88 S Ct 258; 19 L Ed 2d 319 (1967). *Crawford, supra,* suggests the result is the same for *Boykin-Jaworski* defective pleas, although, as noted, that suggestion is dicta.

The trial judge erred in failing to rule on the merits of the claims raised in the oral motion to quash argued on January 30, 1985. This case will be remanded to the trial court for the holding of a hearing to resolve the issue of the validity of the three guilty pleas.

Such hearing is not limited to the precise claims argued on January 30, 1985, but should be limited to those claims of invalidity which are not waived by the entry of a guilty plea.

In addition, the trial court must consider the applicability of the subsequently decided case, *People v Stoudemire*, 429 Mich 262; 414 NW2d 693 (1987). It would appear, at least on the face of the matter, that the prior convictions based on pleas entered on June 20, 1973, would count as only one conviction for habitual offender purposes under *Stoudemire.*

If the trial court rules that any of the three prior convictions is invalid or that, even if valid, there are fewer than three prior valid convictions under *Stoudemire,* then the judgments of conviction must be amended and resentencing will be required.

The convictions of the defendant are affirmed except as to the last issue discussed. We retain jurisdiction of the case limited to a review of the rulings of the trial court on that last issue. The

plea transcripts in the previous cases should be made part of the record on remand.