# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

STEVEN PAUL THOMPSON,

      Defendant-Appellant.

UNPUBLISHED
October 20, 2016

No. 328306
Ontonagon Circuit Court
LC No. 2015-000012-FH

Before: MARKEY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by right from his conviction following a jury trial of delivery/manufacture of a schedule 1, 2, or 3 controlled substance (except marijuana or cocaine), MCL 333.7401(2)(b)(ii). Defendant was sentenced to two-and-a-half to seven years in prison. Defendant claims that he was denied his due process right to a fair trial because he did not have adequate time to defend against the undisclosed evidence, to pursue a different approach at trial, that his counsel was ineffective for failing to request an instruction on the failure to record the statement pursuant to MCL 763.8(2), that the prosecutor improperly bolstered the credibility of the informant, and the trial court's refusal to give the addict-informer instruction to the jury denied him of a fair trial. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On July 2, 2014, the Upper Peninsula Substance Enforcement Team (UPSET), working with an informant, arranged to conduct a controlled buy of illegal narcotics at the residence of an individual named Joseph Bittner. The informant, while under constant surveillance by the police officers involved and equipped with a hidden voice recorder, bought hydrocodone and "bath salts"[1] from Bittner inside Bittner's residence. When the informant returned from the buy, she informed the police officers that defendant was in Bittner's house and that he too had offered to sell her two grams of "bath salts" for $200.00. The police officers searched the informant to make sure that she did not have any narcotics or money on her person, and gave her money in

---

[1] "Bath salts" is a schedule 1 substance. See MCL 333.7212(1)(p).

order to perform another controlled buy. The informant, for a second time, proceeded to Bittner's house and subsequently returned with the bath salts and no money.

Defendant was subsequently arrested on January 8, 2015, and transported to the county jail, where he was interviewed by Deputy Brian Muladore and Deputy Emily Rady, two of the officers involved in the July 2, 2014, controlled buy. Defendant was read his *Miranda*[2] rights, and he signed a *Miranda* card stating that he was waiving those rights. According to Deputy Rady, defendant stated in pertinent part:

> He stated that he has sold bath salts one time. He claimed to have bought them one time in the past. He stated that he purchases them from China, and at that time, he paid $40.00 for approximately twelve grams. He stated that he's also traded sexual acts for bath salts on three separate occasions with three separate women. He's also stated that he sold bath salts for money, but he did not state that he--he did not remember when that happened.

## II. ANALYSIS

## A. VIOLATION OF DISCOVERY RULES

On appeal, defendant argues that the prosecution violated the discovery rules because he was not given the report, detailing his statement to the police, until the first day of the trial.

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).

"The purpose of broad discovery is to promote the fullest possible presentation of the facts, minimize opportunities for falsification of evidence, and eliminate the vestiges of trial by combat." *People v Johnson*, 356 Mich 619, 621 n *; 97 NW2d 739 (1959) (quotation marks and citations omitted). "Pursuant to MCR 6.201(B)(2), upon request, the prosecutor must disclose 'any police report concerning the case'." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). Further, "[w]hen determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *Id.* In *People v Taylor*, 159 Mich App 468, 470-471; 406 NW2d 859 (1987), the Court rejected the notion that a discovery order violation equated to an "unconstitutional denial of due process," disagreeing "that this procedural problem should be elevated to constitutional rank and locked into an inflexible remedy." Rather, the Court stated:

> The question, . . . in any given case is first, whether the party's interest in preparing his own case or his opportunity to test the authenticity of his opponent's

[2] See *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

evidence has been prejudiced by a noncompliance with a discovery order or agreement, and second, if that be the case, what remedy may be appropriate giving due regard to the competing interests of the opposing party, the court and the public. A remedy which would put the objecting party in a better position than he would have enjoyed had disclosure been timely made would seem of dubious value, particularly if it does violence to other legitimate interests in the case. It would be a contradiction in terms, for instance, to exclude a genuine and relevant document only because the objecting party had not had an opportunity to verify its authenticity.

We need not discuss all of the possible circumstances under which it might be determined that some remedy for nondisclosure would be warranted, or what remedies should apply in particular circumstances. Suffice it to say that we concur with the cases cited herein that the trial courts have discretion to deal with questions of noncompliance with discovery orders or agreements; that in fashioning remedies in the exercise of that discretion, there must be a fair balancing of the interests of the courts, the public, and the parties; and that the exclusion of otherwise admissible evidence is a remedy which should follow only in the most egregious cases. [159 Mich App at 486-487.]

MRE 801(d)(2) provides that an admission by a party-opponent is not hearsay. Defendant's statements contained in the report were not hearsay; therefore, the trial court did not abuse its discretion when it allowed testimony regarding the statements as admissions by a party-opponent. The trial court did not allow the report itself into evidence, and defendant has not articulated any evidentiary basis for excluding his statements.

Moreover, defendant did not seek a continuance in order to allow him to prepare for the evidence outlined in the report which would have "alleviated any harm to defendant's case." See *People v Elston*, 462 Mich 751, 764; 614 NW2d 595 (2000). The trial court asked defense counsel if he needed more time to prepare for trial before questioning Rady on the contents of the report. Defense counsel did not request a continuance, and the trial court indicated that Rady would be subject to recall, by defense counsel, if he needed more time. Still, no continuance was requested. "[I]n the absence of a request for a continuance, a trial court should assume that a party does not desire a continuance." *Id.*

The gravamen of defendant's arguments is that the statements should have been excluded because defendant requested disclosure of statements, confessions, or admissions that might be used against him, and by not providing the report, or a timely copy of the recording, his ability to prepare a defense was impaired. Although MCR 6.201(B)(2) makes it mandatory, upon request, for the prosecutor to disclose any police report concerning the case, the prosecutor could not disclose a report that he was not aware existed. The record indicates that the prosecutor received the report from Muladore on the day of trial and immediately produced it for defendant. There was no evidence to show that the prosecutor intentionally suppressed the evidence or acted in bad faith in withholding the evidence. In other words, this was not an egregious case. Moreover, because defendant participated in the interview, he arguably should have known what his statements were in the interview. Compare *Taylor,* 159 Mich App at 488 (finding "defendant was entitled to no remedy for the prosecutor's nondisclosure of the letter in question since the

defendant, having written it himself, had knowledge of it independent of discovery."). Given these facts, there is no indication that the trial court abused its discretion in dealing with the noncompliance. The court appropriately balanced the interests of the court, the public, and the parties in determining that this otherwise admissible evidence should not be excluded as a remedy for the unintentional discovery violation.

Further, the fact that there was conflicting testimony as to the accuracy of defendant's statement does not render the report inadmissible. This is because the jury is tasked with the role of determining credibility and the weight to give the evidence presented at trial. See *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). In his testimony, defendant denied that he confessed to selling bath salts and alleged that the police took "bits and pieces" of his statement and "concocted" the report. Defendant also denied confessing to having sex with three women in exchange for bath salts. Defendant's account contradicted Deputy Rady's testimony. "The jury is free to believe or disbelieve, in whole or in part, any of the evidence presented at trial." *Id.* at 228 (internal quotation marks omitted). In any event, a reviewing court will not disturb the credibility findings of the fact finder. See *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). "This Court does not weigh the competing evidence; that is the jury's function." *Unger*, 278 Mich App at 228.

To overcome the presumption that a preserved non-constitutional error is harmless, "a defendant must persuade the reviewing court that it is more probable than not that the error in question was outcome determinative." *Elston*, 462 Mich at 766. An error is "outcome determinative" if it undermined the reliability of the verdict. See *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). "In making this determination, the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *Elston*, 462 Mich at 766. In this case, there was other evidence of defendant's guilt apart from the evidence in the report. The informant testified that she bought two grams of bath salts from defendant in exchange for $200.00. When the audio recording was played in court, the informant identified defendant's voice as one of the voices on the audio recording. Defendant also admitted that it was his voice on the recording. Moreover, the informant positively identified defendant in court as the individual who sold her bath salts in exchange for $200.00. Further, Deputy Rady testified that on the day of the controlled buy, she saw defendant and Bittner standing outside Bittner's house as the informant approached. Deputy Rady, who claimed she was familiar with defendant's voice, and identified defendant's voice on the audio recording. Given this evidence, it is not more probable that defendant would have been acquitted if his statements had been excluded.

Regarding counsel's failure to seek an instruction on the failure of the police to record his interview, to preserve a claim of ineffective assistance of counsel, the argument should be raised by a motion for a new trial or an evidentiary hearing. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). Because defendant did not move for a new trial or an evidentiary hearing, this Court's review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

MCL 763.8(2) requires that a police officer "interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony [to] make a time-stamped, audiovisual recording of the entire interrogation." Failure to record such a

statement entitles the defendant to a jury instruction that "it is the law of the state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement." MCL 763.9. A major felony is "a felony punishable by imprisonment for life, for life or any term of years, or for a statutory maximum of 20 years or more, or a violation of 520d of the Michigan penal code, 1931 PA 328, MCL 750.520d." MCL 763.7(d).

In this case, Deputy Rady testified that although defendant's interview was not recorded, Deputy Muladore took notes of the interview. She admitted that Deputy Muladore did not write down defendant's words verbatim, but paraphrased his statements. However, defendant's statements were not required to be recorded because he was charged with delivery/manufacture of a schedule 1, 2, or 3 controlled substance (except marijuana or cocaine), which was punishable by up to seven years in prison. See MCL 333.7401(2)(b)(ii). Therefore, defendant's offense does not qualify as a major offense under the statute. Counsel was not ineffective for his failure to request the jury instruction because any request would have been futile. See *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

## B. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor engaged in four instances of prosecutorial misconduct. These unpreserved claims are reviewed for plain error affecting substantial rights. *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001). Reversal is only warranted if plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings, independent of defendant's innocence. *People v Bennett*, 290 Mich App 465, 475-476; 802 NW2d 627 (2010). This Court will not find error requiring reversal where a curative instruction could have alleviated any prejudicial effect. *Id*. at 476.

The role and responsibility of a prosecutor is to seek justice, not merely to convict. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A defendant's opportunity for a fair trial can be jeopardized when a prosecutor turns from this responsibility by interjecting issues broader than the guilt or innocence of the accused. *Id.* at 63-64.

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *Dobek*, 274 Mich App at 63. A claim of prosecutorial misconduct based on the violation of a specific, enumerated constitutional right requires a court to take special care to assure that the prosecutor did not infringe upon that right. See *People v Blackmon*, 280 Mich App 253, 261; 761 NW2d 172 (2008). Prosecutorial misconduct can be so flagrant that it is deemed to have rendered the trial fundamentally unfair and thus deprived the defendant of due process. See *Id*. at 267. Prosecutorial misconduct issues are decided on a case-by-case basis. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). Where a claim of prosecutorial misconduct is based on the assertion that the prosecutor made an improper argument, the reviewing court must read the remarks in context, evaluating them "in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005).

First, defendant argues that the prosecutor, through questioning the witnesses, repeatedly bolstered the informant's credibility at trial and used their testimony to argue to the jury that the informant was trustworthy and reliable. Specifically, defendant challenges Deputy Muladore's statements that he found the informant "trustworthy and believable," and that she was "reliable, credible, and trustworthy." Defendant also challenges Deputy Rady's statements that the informant was "very trustworthy" and gave "good information," and that her work with the informant was "absolutely successful." Generally, the prosecution has wide latitude in arguing the facts and all reasonable inferences arising from it as they relate to [the prosecution's] theory of the case." *Dobek*, 274 Mich App at 66. While "[i]ncluded in the list of improper prosecutorial commentary or questioning is the maxim that the prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness'[s] truthfulness," *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995), the prosecutor did not rely on his knowledge, but on the officers' experiences with the witness. Moreover, during his opening statement, defense counsel told the jury that this case involved a "single allegation" against defendant and questioned the credibility of the informant. Defense counsel continued:

> You've heard briefly already that she has a record that has to do with truth and honesty . . . You're going to have a person on here who we know that cannot be truthful. You will hear from a person that you know she has a plea agreement, a plea bargain to do what she did. She had a reason. She benefitted from this. That all goes to credibility, Ladies and Gentlemen, and if you have no credibility, you're not going to be able to convict my client at all, because it all focuses on her and her only.
>
> * * *
>
> . . . [B]ut one thing I find puzzling in this, Ladies and Gentlemen, is this alleged controlled buy. It was not planned. Now apparently [the informant], the incredible--individual who lacks credibility . . .
>
> * * *
>
> After hearing this case, Ladies and Gentlemen, getting back to reasonable doubt, I believe you will have reasonable doubt. You will have a fair, honest doubt as to one thing, the credibility of the only witness in this case, and you'll have a credibility--you'll have doubt as to where those bath salts came from. After all, Ladies and Gentlemen, I think it's difficult, if not impossible, to convict a person, convict my client based upon the testimony of a witness who lacks credibility . . .

When reviewed in context, the prosecutor's questions and the witnesses' answers were in response to defendant's opening statement where the informant's credibility was repeatedly attacked by defendant. When the questions are viewed in light of the defense arguments, which put the informant's credibility in issue, it cannot be said that defendant was denied a fair and impartial trial by questions aimed at eliciting rebuttals to this claim. See *Brown*, 267 Mich App at 152.

Further, defendant contends that the prosecutor improperly asked defendant to comment on the credibility of the prosecution witnesses by asking him if the officers lied and whether they made up the contents of his statements to the police. "It is not proper for a prosecutor to ask a defendant to comment on the credibility of prosecution witnesses since a defendant's opinion on such a matter is not probative and credibility determinations are to be made by the trier of fact." *People v Knapp*, 244 Mich App 361, 384; 624 NW2d 227 (2001) (citations and quotation marks omitted). However, during his testimony, defendant admitted that he made a statement to the police but denied that the written statement was a representation of what he said to the police. In fact, defendant contended that "in the course of conversation," the police officers "took bits and pieces [of his statements] and concocted this statement[sic] this big out of fifteen minute conversation." Given that defendant had already testified that the officers' testimony was not credible, the prosecutor's questions were innocuous. Moreover, we note that defendant opened the door to this line of questioning and once opened, "cross-examination on the subject was proper." See *People v Bettistea*, 173 Mich App 106, 116; 434 NW2d 138 (1988). Additionally, a curative instruction would have remedied any issue.

Furthermore, defendant argues that he was prejudiced when the prosecutor asked him about his ability to sit in the courtroom during the testimony, which gave him the opportunity to tailor his testimony. This was not in error. The prosecutor's statement concerned defendant's credibility. See *People v Buckey*, 424 Mich 1, 14-15; 378 NW2d 432 (1985). "It is well established that the prosecutor may comment upon the testimony and draw inferences from it and may argue that a witness, including the defendant, is not worthy of belief." *Id.*. "Opportunity and motive to fabricate are permissible areas of inquiry of any witness" *Id.* at 15. The prosecutor's comment was proper in light of defendant's testimony that he did not tell the police officers that he sold bath salts. Rather, defendant alleged that during the interview with the police officers, he was upset so he told the police officers that he would do anything to go home to his daughter, including pleading guilty to selling bath salts.

Next, defendant argues that in his closing statement, the prosecutor improperly bolstered the informant by telling the jury that she was "credible, her work exemplary, she had no reason to lie, and that the police did not have any concerns about her credibility, truthfulness, or reliability." When viewed as a whole, the prosecutor was merely summarizing the facts in evidence and encouraging the jury to draw reasonable inferences from those facts. In his closing and rebuttal statements, the prosecutor was arguing that the credibility of the witness should be based on the evidence and reasonable inferences. This is proper. *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). "A prosecutor need not confine argument to the blandest of all possible terms, but has wide latitude and may argue the evidence and all reasonable inferences from it." *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001).

Defendant also argues that the prosecutor made a statement not supported by the testimony at trial when he told the jury that the informant did not need the controlled-buy deal with defendant to get the benefit of the plea bargain. However, this argument is supported by the testimony at trial. Deputy Rady testified that she had a written agreement with the informant that she would make three controlled buys from people that were selling illegal substances. Further, the informant also testified that her plea deal required her to complete three separate deals with three separate individual, but that she had completed "over twenty to twenty-two" deals.

-7-

Finally, defendant argues that the prosecutor denigrated the defense by telling the jury in his rebuttal statement that defense counsel was making up his own facts. Because defendant did not preserve this issue by a contemporaneous objection and request for a curative instruction, this issue is reviewed for plain error affecting defendant's substantial rights. See *Bennett*, 290 Mich App at 475. "[A] prosecutor may not suggest that a defense counsel is intentionally attempting to mislead the jury" or denigrate defense counsel. *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). A prosecutor may not argue that defense counsel intentionally attempted to mislead the jury because "he is in effect stating that defense counsel does not believe his own client." *Id.* Such argument undermines the defendant's presumption of innocence and impermissibly shifts the focus from the evidence itself to the defense counsel's personality. *People v Wise*, 134 Mich App 82, 102; 351 NW2d 255 (1984). However, when viewed as a whole, the prosecutor's statement was in response to defendant's closing argument that the evidence did not support the charge against him. Even if the prosecutor's comments were prejudicial, reversal is not warranted because it did not result in the conviction of an actually innocent defendant, or "seriously affect the fairness, integrity, or public reputation of judicial proceedings independent of defendant's innocence." *Carines*, 460 Mich at 763-764

Moreover, any possible improper prejudice stemming from the prosecutor's comments was cured when the trial court specifically instructed the jury that "the lawyers' statements and arguments are not evidence," but is meant to help the jury "understand the evidence and each side's legal theories." This instruction was enough as juries are presumed to follow the instructions of the court. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

## C. OTHER ACTS EVIDENCE

Defendant also argues that his statements concerning his prior involvement with bath salts constituted evidence of other crimes or bad acts and should have only been offered with the requisite warning to the defense. "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Burns*, 494 Mich at 110. An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes. *Schaw*, 288 Mich App at 236.

"[A] prior statement does not constitute a prior bad act coming under MRE 404(b) because it is just that, a prior statement, and not a prior bad act." *People v Rushlow*, 179 Mich App 172, 176; 445 NW2d 222 (1989), citing *People v Goddard*, 429 Mich 505, 518; 418 NW2d 881 (1988). Rather, a defendant's prior statements are admissible as statements of a party-opponent under MRE 801(d)(2). The appropriate inquiry is whether the statement is relevant and whether its probative value outweighed its possible prejudicial effect. *Goddard*, 429 Mich at 515. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Defendant's statements were relevant to show that he knew where to purchase bath salts and that he had sold bath salts to the informant. He acknowledged that he sold bath salts but claimed that he did not remember who he had sold bath salts to; because he did not remember who the recipient was, the statement made it more likely that the recipient was the informant.

In addition, defendant has failed to show that he was unfairly prejudiced by the evidence by showing that the probative value is substantially outweighed by any prejudicial effect. MRE 403 is not intended to exclude "damaging" evidence, because any relevant evidence will be damaging to some extent. See *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). The evidence is only excluded when the probative value is substantially outweighed by the danger of unfair prejudice. *Id*. Although defendant's statements were damaging, the evidence, as an admission by defendant, had a compelling tendency to establish that he committed the crime.

## D. ADDICT-INFORMANT JURY INSTRUCTION

Defendant also contends that the trial court's failure to give the addict-informant jury instruction denied him a fair trial. A claim of instructional error involving a question of law is reviewed de novo, but the trial court's conclusion that an instruction applies to the facts of the case is reviewed for an abuse of discretion. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012).

When an addict-informant provides the only testimony against a defendant, the defendant is entitled to a jury instruction cautioning that it should consider the addict-informant's information with special scrutiny. *People v Jackson*, 292 Mich App 583, 601; 808 NW2d 541 (2011). However, this instruction should only be given if the evidence clearly indicates that the witness was an addict, and occasional drug use by an informant does not warrant the addict-informer instruction. *People v Griffin*, 235 Mich App 27, 40; 597 NW2d 176 (1999) overruled in part on other grounds in *People v Thompson*, 477 Mich 146, 148; 730 NW2d 708 (2007).

At trial, the informant testified that although she was previously addicted to methadone, five years earlier, she went through a treatment program for that addiction. She also admitted that she had used cocaine, methamphetamine, marijuana, mushrooms, and acid, but denied ever being addicted to any of the drugs. Although the informant admitted that she used drugs several times during her undercover work, she testified that it was to maintain her credibility with the individuals selling the drugs to her. There was no evidence to show that she was using drugs during the controlled buy with defendant or that she was addicted to drugs at that time or at the time of trial.

Moreover, there was other testimony linking defendant to the crime. Deputy Rady testified that on the day of the controlled buy, she saw defendant and Bittner standing outside Bittner's house as the informant approached. Deputy Rady also identified defendant's voice on the audio recording. She stated that she was able to recognize and identify defendant because he had been incarcerated and she worked within the jail as a correctional officer. Further, during cross-examination, defendant admitted that on July 2, 2014, he was "apparently" in Bittner's residence and that it was his voice on the audio recording. In any event, because there was

insufficient evidence to show that the informant was an addict at the time of the controlled buy, there was no error in the trial court's decision.

Affirmed.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Amy Ronayne Krause