*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 22, 2020

Plaintiff-Appellee,

v

No. 345699
Ingham Circuit Court
LC No. 17-000526-FC

LAWRENCE GERARD NASSAR,

Defendant-Appellant.

Before: CAMERON, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant, Lawrence Gerard Nassar, appeals the denial of his motion for resentencing and his motion for disqualification of the sentencing judge. Pursuant to a plea agreement, Nassar pleaded guilty to seven counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a) (victim under 13 years of age) (three counts), and MCL 750.520b(1)(b) (victim at least 13 but less than 16 years of age and defendant used position of authority) (four counts). Consistent with the plea agreement, Nassar received concurrent sentences of 40 to 175 years' imprisonment for each conviction. We affirm.

## I. BACKGROUND

Nassar was a physician at Michigan State University and the team physician for USA Gymnastics. During his tenure at Michigan State University, Nassar sexually abused dozens of teenage and prepubescent girls, many of whom were his patients, over many years. Nassar also collected 37,000 images and videos of child pornography. Nassar was criminally charged in Ingham County, Eaton County, and in the United States District Court for the Western District of Michigan. In the Eaton County case, Nassar agreed to plead guilty to multiple counts of first-degree criminal sexual conduct with the condition that the low end of his sentence was limited to between 25 and 40 years in prison, and his maximum sentence was left open for the trial court to determine at sentencing. Nassar was later sentenced in the Eaton County case to serve multiple

-1-

concurrent terms of 40 to 125 years' imprisonment.[1]  Nassar also resolved his federal case by pleading guilty to charges involving the receipt and attempted receipt of child pornography, 18 USC 2252A(a)(2)(A) and (b)(1), possession of child pornography, 18 USC 2252A(a)(5)(B) and (b)(2), and destruction and concealment of records and tangible objects, 18 USC 1519.  Nassar was sentenced to 20 years' imprisonment for each of his federal convictions.  Because the federal judge ruled that the sentences would be served consecutively, Nassar effectively received a 60-year federal sentence.[2]

The Ingham County proceedings are at issue in this appeal.  In 2017, Nassar was charged in the Ingham Circuit Court with multiple counts of first-degree criminal sexual conduct for abuse that occurred from 1998 to 2015.  A written plea agreement was filed with the trial court, in which Nassar agreed to plead guilty to seven counts of first-degree criminal sexual conduct.  Like the Eaton County case, the agreement guaranteed that the low end of Nassar's sentence would be within the range of 25 to 40 years in prison, while his maximum sentence was left open for the trial court to determine at sentencing.  Nassar also agreed to allow all of the victims or their parents or representatives to give victim impact statements at the sentencing hearing.[3]  This agreement included 125 victims who had reported assaults to the Michigan State University Police Department, as well as other-acts victims listed on the prosecutor's witness list.  The prosecution agreed to dismiss eight other counts of first-degree criminal sexual conduct, as well as five lesser alternative charges.  In return, the prosecution also agreed not to charge Nassar for additional criminal sexual conduct allegations that had been reported to the Michigan State University Police Department as of November 22, 2017, and not to prosecute Nassar for his possession of four images of child sexually abusive material.

On November 22, 2017, a plea hearing was held, and the terms of the plea agreement were placed on the record.  The prosecutor noted that the plea agreement was approved by the 125 victims who had reported Nassar's abuse to the Michigan State University Police Department.  After acknowledging that he had signed a form advising him of his rights, Nassar pleaded guilty to each of the seven counts.  Nassar acknowledged that he did not wear gloves when he digitally penetrated the victims, that he penetrated the victims for his own purposes rather than for a medical

---

[1] Nassar filed a delayed application for leave to appeal his convictions and sentences in the Eaton Circuit Court case, and this Court denied his delayed application for leave to appeal in that case in the same order in which this Court granted leave to appeal in the instant case.  *People v Nassar*, unpublished order of the Court of Appeals, entered December 13, 2018 (Docket Nos. 345699 and 345808).  Our Supreme Court denied leave.  *People v Nassar*, 503 Mich 1003 (2019).

[2] On August 22, 2018, the United States Court of Appeals for the Sixth Circuit affirmed Nassar's federal convictions and sentences, concluding that "the district court did not plainly err when it ordered Nassar's federal sentence to run consecutive to his state sentences."  *United States v Nassar*, unpublished order of the United States Court of Appeals for the Sixth Circuit, entered August 22, 2018 (Docket No. 17-2490), p 6.

[3] The requirement that all victims be allowed to address the trial court was also part of the Eaton County plea agreement.

purpose, and that his actions were against medical protocol. The sentencing judge accepted Nassar's guilty pleas on the seven counts at issue and dismissed the remaining counts.

Due to the number of victims who addressed the court, the sentencing hearing was held over several days in January 2018. There were more than 150 victim impact statements presented at sentencing, most of which were presented by the victims at the sentencing hearing.[4] The sentencing judge made encouraging and supportive comments to virtually every victim after that victim spoke. And at the conclusion of the sentencing hearing, the judge sentenced Nassar to 40 to 175 years' imprisonment for each count.

On July 24, 2018, Nassar moved for resentencing or to correct an invalid sentence. In relevant part, Nassar argued that the sentencing judge was not an unbiased and impartial judge, and he argued that resentencing must occur before a different judge. On the same day, Nassar also moved for disqualification of the sentencing judge, arguing that the sentencing judge was biased against him, that there was an appearance of impropriety, and that recusal was constitutionally required. Nassar based his argument on the sentencing judge's statements and conduct at the sentencing hearing, as well as her postsentencing statements and behavior that included public appearances, social media activity, and statements to the press. After the prosecution responded in opposition to the motion for disqualification, Nassar filed a reply brief that appended additional documents regarding the sentencing judge's postsentencing social media activity.

On August 3, 2018, the sentencing judge held oral argument on Nassar's motion for disqualification and denied the motion. The motion for disqualification was then referred to the chief circuit judge, who denied the motion on de novo review and who denied a subsequent motion for reconsideration. Thereafter, on August 27, 2018, the sentencing judge held oral argument on Nassar's motion for resentencing. Although the sentencing judge denied the motion for resentencing with respect to the allegations of bias and impartiality, she issued an amended judgment of sentence. We granted Nassar's delayed application for leave with respect to his arguments for resentencing before a different judge. See *People v Nassar*, unpublished order of the Court of Appeals, entered December 13, 2018 (Docket Nos. 345699 and 345808).

## II. JUDICIAL DISQUALIFICATION

Nassar argues that the sentencing judge and the chief judge erred in denying his motion for disqualification of the sentencing judge. We disagree.

## A. PRESERVATION

A defendant must raise a claim of judicial bias in the trial court in order to preserve the issue for appellate review. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). A motion for judicial disqualification "must be filed within 14 days of the discovery of the grounds

---

[4] It is unnecessary to summarize each victim's statement. We will note certain exchanges pertinent to the issue raised on appeal later in this opinion when addressing Nassar's argument on appeal.

for disqualification." MCR 2.003(D)(1)(a).[5] A due process ground for disqualification is also subject to the time limitation of the court rule. See *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009) ("[W]e disagree with respondent's assertion that his due process ground for disqualification should not be subject to the time limitation [of MCR 2.003(D)(1)(a)]."). Failure to file a motion for disqualification within the 14-day period required by MCR 2.003(D)(1)(a) renders the issue unpreserved for appellate review. See *Kloian v Schwartz*, 272 Mich App 232, 244; 725 NW2d 671 (2006) ("Generally, to preserve this issue for appellate review, a motion to disqualify must be filed within 14 days after the moving party discovers the basis for disqualification . . . .").

Nassar moved for disqualification in July 2018. To the extent that the motion was premised on the sentencing judge's comments at the sentencing hearing, the motion was untimely because it was filed more than 14 days after the January 2018 sentencing hearing. In addition, Nassar made no objection on the ground of judicial bias at the sentencing hearing itself, which further supports the conclusion that this issue is unpreserved to the extent that Nassar is relying on the judge's remarks and behavior at sentencing. See generally, *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996) (the defendant's claim that the trial judge made prejudicial comments in front of the jury was unpreserved and forfeited because the defendant did not object in the trial court).

Nassar's motion was also untimely to the extent that he relied on the sentencing judge's comments to the press and at public appearances, as well as to the extent that he relied on the judge's social media activity as recounted in news articles published on April 24, 2018, and May 23, 2018, given that those articles were published, and thus should have been discovered, more than 14 days before the motion was filed. See *In re MKK*, 286 Mich App at 566 ("Because respondent's motion for disqualification was filed more than 14 days after he knew or should have discovered the alleged bases for disqualification, it was untimely and was, therefore, properly denied."). Nassar's motion also relied on the fact that the judge attended the ESPY awards, at which the victims in this case were honored, on July 18, 2018, as reflected in a July 18, 2018 article in the Detroit News. Because that conduct occurred less than 14 days before the July 24, 2018

---

[5] In a footnote in his appellate brief, Nassar argues that the time limitation of MCR 2.003(D)(1)(a) does not apply to motions for disqualification filed after conviction. He notes that the full language of MCR 2.003(D)(1)(a) provides, "To avoid delaying trial and inconveniencing the witnesses, all motions for disqualification must be filed within 14 days of the discovery of the grounds for disqualification. If the discovery is made within 14 days of the trial date, the motion must be made forthwith." Although the language of the court rule certainly seems to contemplate that motions for disqualification will generally be filed before trial given the reference to the need to avoid trial delays and the inconveniencing of witnesses, the rule goes on to state broadly that "*all* motions for disqualification must be filed within 14 days of the discovery of the grounds for disqualification." MCR 2.003(D)(1)(a) (emphasis added). There is no broader classification than the word "all," and the word "all" leaves no room for exceptions. *Peters v Gunnell, Inc*, 253 Mich App 211, 223; 655 NW2d 582 (2002).

filing of the motion for disqualification, the motion was timely to the extent that Nassar relied on the judge's attendance at the ESPY awards.

In his August 3, 2018 reply brief in support of his motion for disqualification, Nassar relied on additional documentation of the sentencing judge's social media activity that occurred after sentencing in this case. It is questionable whether it was proper for Nassar to rely on these additional materials in his reply brief. In the analogous context of appellate briefing, this Court has noted that "[r]eply briefs must be confined to rebuttal, and a party may not raise new or additional arguments in its reply brief." *Kinder Morgan Mich, LLC v City of Jackson*, 277 Mich App 159, 174; 744 NW2d 184 (2007). Moreover, all but two of the social media posts that were appended to Nassar's reply brief were dated more than 14 days before the filing of the motion for disqualification, and the motion for disqualification was thus untimely with respect to all but two of those social media posts. *In re MKK*, 286 Mich App at 566. The two exceptions are the judge's July 20, 2018 Facebook post sharing photographs of her attendance at the ESPY awards and the judge's August 1, 2018 tweet sharing a news article about an upcoming documentary regarding Nassar.[6]

Importantly, MCR 2.003(D)(1)(d) provides that untimely motions for disqualification "may be granted for good cause shown." Nassar indicates that his "counsel only became aware of the judge's public statements and social media activities shortly before filing the motions and then became aware of more after filing the motions." This assertion is vague and fails to identify precisely when defense counsel became aware of each public appearance and the social media activity. Nor does Nassar explain why this publicly available information was not discovered sooner. Therefore, we conclude that Nassar has failed to establish good cause and the untimely filing is not excused.

In sum, Nassar's motion for disqualification was untimely with respect to some of his arguments, but timely in other respects. This issue is therefore preserved in part and unpreserved in part.

## B. STANDARDS OF REVIEW

This Court "review[s] a trial court's factual findings regarding a motion for disqualification for an abuse of discretion and its application of the facts to the law de novo. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *In re MKK*, 286 Mich App at 564 (quotation marks and citations omitted). As for the unpreserved aspects of Nassar's argument, this Court's review is "for plain error affecting [Nassar's] substantial rights." *Jackson*, 292 Mich App at 597, citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires

---

[6] Of course, Nassar cannot be faulted for failing to provide the August 1, 2018 tweet with his motion for disqualification, because the motion was filed before the date of the tweet.

a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*Carines*, 460 Mich at 763 (citation omitted).]

"Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, brackets, and citation omitted).

## C. ANALYSIS

### 1. RELEVANT AUTHORITY

A trial judge is presumed to be unbiased, *People v Houston*, 179 Mich App 753, 756; 446 NW2d 543 (1989), and the party moving for disqualification bears the burden of proving that the motion is justified, MCR 2.003(B); *People v Dixson*, 403 Mich 106, 109; 267 NW2d 423 (1978). "[T]he party who challenges a judge on the basis of bias or prejudice must overcome a heavy presumption of judicial impartiality." *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). Moreover, although untimely motions for disqualification may be granted for good cause shown, "untimeliness is a factor in deciding whether the motion should be granted[.]" MCR 2.003(D)(1)(d).

The grounds and procedure for the disqualification of a judge are listed in MCR 2.003. *People v Bettistea*, 173 Mich App 106, 123; 434 NW2d 138 (1988). See also MCR 6.001(D). MCR 2.003(C)(1) provides, in relevant part:

> Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:
>
> (a) The judge is biased or prejudiced for or against a party or attorney.
>
> (b) The judge, based on objective and reasonable perceptions, has either (*i*) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v* [*AT*] *Massey* [*Coal Co, Inc*], [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (*ii*) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

MCR 2.003(C)(1)(a) requires a showing of actual bias or prejudice. See *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). In general, "the challenged bias must have its origin in events or sources of information gleaned outside the judicial proceeding." *Cain*, 451 Mich at 495. Judicial rulings alone almost never provide a valid basis for finding judicial bias or partiality, *id*. at 496, absent "a deep-seated favoritism or antagonism that would make fair judgment impossible[,]" *In re Contempt of Henry*, 282 Mich App at 680 (quotation marks and citation omitted). "Disqualification on the basis of bias or prejudice cannot be established merely by repeated rulings against a litigant, even if the rulings are erroneous." *In re MKK*, 286 Mich App at 566. A trial judge's remarks that "are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *Id*. at 567. "[P]artiality is not established by expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds

-6-

of what imperfect men and women sometimes display." *People v McIntire*, 232 Mich App 71, 105; 591 NW2d 231 (1998), rev'd on other grounds 461 Mich 147 (1999).

In addition, MCR 2.003(C)(1)(b) provides for disqualification on the basis of a serious risk of actual bias affecting a party's due process rights. "Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Kern v Kern-Koskela*, 320 Mich App 212, 231; 905 NW2d 453 (2017) (quotation marks and citation omitted).

> Due process principles require disqualification, absent a showing of actual bias or prejudice, in situations where experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable, such as situations when the judge has a pecuniary interest in the outcome, has been the target of personal abuse or criticism from a party, is enmeshed in other matters involving a party, or has previously participated in the case as an accuser, investigator, fact-finder, or initial decisionmaker. Disqualification pursuant to the Due Process Clause is only required in the most extreme cases. [*In re MKK*, 286 Mich App at 567 (quotation marks and citations omitted).]

MCR 2.003(C)(1)(b) also provides for disqualification when a judge has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct, which states, in relevant part:

> A. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

> B. A judge should respect and observe the law. At all times, the conduct and manner of a judge should promote public confidence in the integrity and impartiality of the judiciary. Without regard to a person's race, gender, or other protected personal characteristic, a judge should treat every person fairly, with courtesy and respect.

"Under MCR 2.003(C)(1)(b), the test for determining whether there is an appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *Kern*, 320 Mich App at 232 (quotation marks and citation omitted).

## 2. THE SENTENCING JUDGE'S COMMENTS DURING THE SENTENCING PROCEEDING

We will first address the sentencing judge's remarks and behavior at sentencing, which are unpreserved for the reasons already discussed. At the outset, we find it important to note that the sentencing occurred *after* Nassar had pleaded guilty to seven counts of first-degree criminal sexual conduct and had agreed to allow all of the sexual assault victims (or their parents or representatives) to speak at sentencing. Therefore, at the time of sentencing, the "truth-

determining" portion of the proceedings concerning Nassar's guilt or innocence had ended, and Nassar was no longer presumed innocent. See *Herrera v Collins*, 506 US 390, 399; 113 S Ct 853; 122 L Ed 2d 203 (1993) (holding that, once a defendant has been adjudged guilty in a fair proceeding, "the presumption of innocence disappears."). This clarification is important because "[s]entencing is the time for comments against felonious, antisocial behavior recounted and unraveled before the eyes of the sentencer. At that critical stage of the proceeding when penalty is levied, the law vindicated, and the grievance of society and the victim redressed, *the language of punishment need not be tepid*." *People v Antoine*, 194 Mich App 189, 191; 486 NW2d 92 (1992) (emphasis added). Indeed, a trial judge "may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person." *Liteky v United States*, 510 US 540, 550-551; 114 S Ct 1147; 127 L Ed 2d 474 (1994). Thus, "the judge is not thereby recusable for bias or prejudice, since his [or her] knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings[.]" *Id*. at 551.

### a. MCR 2.003(C)(1)(a)

Nassar first argues that the sentencing judge exhibited actual bias and prejudice by openly lamenting that she could not impose cruel and unusual punishment on him. To support this, Nassar refers to the following comment by the judge after a video of a victim's statement was played on the first day of the sentencing hearing:

> I will decide at sentencing how long. The plea agreement, which, as I said, I will honor, but on the tail end I'll make that determination. How much is a young girl's life worth? Our constitution does not allow for cruel and unusual punishment. If it did, I have to say I might allow what he did to all of these beautiful souls, these young women in their childhood, I would allow someone or many people to do to him what he did to others.

> Our country does not have an eye for an eye and Michigan doesn't have the death penalty so I don't know how to answer how much is a young girl's life worth, but I have children of my own and there's not enough gold in the planet that would satisfy that question, and I think all of you victims are gold. You're valuable. I'm so very sorry this happened and, [victim], I've heard your scream. I will make a tough decision. I hope you will like it.

The sentencing judge's statement was wholly inappropriate. In essence, the judge stated that she would allow physical retribution against Nassar if it were not constitutionally prohibited. While a sentence judge's language need not be tepid, see *Antoine*, 194 Mich App at 191, the suggestion that a judge would allow or support the physical or sexual assault of a defendant in prison, regardless of how abhorrent that defendant's conduct may be, erodes public confidence in the judiciary and casts doubt on whether a defendant's due process rights were followed. Certainly, the judge was well within her authority to condemn Nassar's reprehensible conduct and impose a severe penalty given his conduct and the ages of his many victims. But inflammatory hyperbole has no place in a sentencing hearing. While we are obviously troubled by this comment, we note that the judge made the comment in the context of recognizing the legal constraints on the court's sentencing discretion. Indeed, the judge noted that there was a sentencing agreement and assured the parties of her intention to abide by it. The judge also emphasized that Nassar was

protected by the constitutional prohibition on cruel and unusual punishment and that "eye for an eye" punishment is not allowed. We further note that the judge also emphasized that vigilante crime is not tolerated. In other words, it is clear from the overall context of the sentencing hearing that the judge was not literally wishing physical harm on Nassar. Although the comments should not have been made, the judge's comments did not indicate the existence of actual bias or prejudice.

Nassar also asserts that the sentencing judge expressed an expectation that Nassar would be harmed in prison, without condemning such possible harm to him. The comment at issue was made after a 15-year-old victim stated at sentencing that Nassar would be treated fairly well in federal prison and that he would likely be able to befriend and manipulate other prison inmates. In response to this victim's concern, the judge stated that federal prison "is no picnic[]" and that "there isn't anyone in prison who hasn't heard about this case, who hasn't heard your voice, and if they haven't heard it, they will. They have families out there. They take your words seriously, even behind bars. So it will not be a picnic for him as you imagine." Understood in context, it appears that the judge was attempting to assure this minor victim that Nassar would not be able to manipulate his fellow inmates as easily as the victim assumed. The judge also appeared to be attempting to defuse a tense, highly emotional sentencing hearing and allay concerns that Nassar would not be adequately punished for his crimes. Indeed, when denying Nassar's motion for disqualification, the judge explained:

> I was afraid that something would happen and so when I got upset, in part it was my frustration, but it was also because you could feel the tension in here, and as soon as I got upset, it deflated, and I was worried that people would come after him, like they did in Eaton County,[7] but they did not. As soon as I got upset, everyone released their tension.

Consequently, we do not view the sentencing judge's comment as suggesting or hoping that Nassar would be physically harmed in prison. The comment does not indicate the existence of actual bias.

Nassar next notes that the sentencing judge stated, after announcing the sentence of 40 to 175 years' imprisonment, that Nassar's "death warrant" had just been signed. This comment was made after the judge observed that Nassar was serving a 60-year federal sentence. The judge's statement seems to be based on the mistaken belief that Nassar would begin serving his Ingham County sentence after he completed serving his 60-year federal sentence.[8] Although the judge should have exercised greater restraint in this instance, it appears that the judge was observing her

---

[7] During the Eaton County sentencing hearing, Nassar was attacked by a father of three daughters who were sexually assaulted by Nassar.

[8] This error is reflected in the sentencing court's original judgment of sentence, which states that Nassar's Ingham County sentence was to be served consecutive to Nassar's federal sentence. However, the sentencing court removed this requirement after the defense later moved to correct the court's invalid sentence and the prosecution conceded that the trial court could not require that the state sentences run consecutively to the federal sentence.

belief that, given the lengths of his federal and state sentences, Nassar will likely live the remainder of his life in prison. The judge's comment, although unnecessary, does not indicate actual bias or prejudice.

In sum, we conclude that Nassar has failed to establish plain error given that the sentencing judge's comments did not indicate actual bias or prejudice. We further conclude that Nassar has failed to establish that the alleged actual bias and/or prejudice affected his substantial rights. Specifically, as part of the plea agreement, Nassar agreed to a guidelines minimum sentence range between 25 and 40 years' imprisonment for each count, with the sentencing judge having the discretion to determine the minimum sentence within that range as well as the discretion to determine the maximum sentence for all seven counts. After confirming with Nassar that he did not wish to withdraw his pleas of guilt even though he expressed discontent with the sentencing procedure to which he had agreed, the judge complied with the sentencing agreement and sentenced Nassar to 40 to 175 years' imprisonment for each conviction.

Additionally and importantly, the sentencing judge articulated valid factors to support the sentencing decision. When imposing a sentence, a court should consider the following factors: "(1) reformation of the offender, (2) protection of society, (3) punishment of the offender, and (4) deterrence of others from committing like offenses." *People v Wines*, 323 Mich App 343, 351; 916 NW2d 855 (2018), rev'd on other grounds, ___ Mich ___; ___ NW2d ___ (2020) (Docket No. 157667), citing *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). Other appropriate sentencing considerations include a defendant's lack of remorse, *People v Houston*, 448 Mich 312, 323; 532 NW2d 508 (1995), as well as the impact of the crime on the victim, *People v Jones*, 179 Mich App 339, 342; 445 NW2d 518 (1989). The judge addressed the relevant factors at sentencing, and specifically noted the low or nonexistent likelihood of rehabilitation by stating: "I am a judge who believes in life and rehabilitation when rehabilitation is possible. I have many defendants come back here and show me the great things they've done in their lives after probation, after parole. I don't find that's possible with you." The judge also addressed the related need to protect society by noting that Nassar knew that, even though he had a problem for many years, he did nothing to control his criminal urges. The judge then told Nassar that "anywhere you walk destruction will occur to those most vulnerable." The judge considered retribution or punishment of the offender when telling Nassar that "you do not deserve to walk outside of a prison ever again." The judge also considered Nassar's lack of remorse when she referenced a letter that he wrote during the sentencing proceeding, which referred to the victims with the phrase "Hell hath no fury like a woman scorned." Finally, the judge considered the impact of Nassar's crimes on the victims throughout the hearing and noted that she would take that into consideration when sentencing Nassar.

In short, the sentencing transcript reflects that the sentencing judge fashioned Nassar's sentences on the basis of valid sentencing considerations; specifically, information obtained as part of this judicial proceeding. In addition, although Nassar argues that the judge "made numerous statements throughout the proceedings indicating that she had already decided to impose the maximum allowed by the sentence agreement even before the sentencing hearing began," the fact of the matter remains that the judge imposed a minimum sentence that fell within the range of Nassar's agreed-upon plea. Furthermore, Nassar's argument is not supported by the record given that the judge remarked at one point that, although the judge had "ideas," the judge had not yet decided Nassar's sentence. Therefore, Nassar has failed to establish plain error affecting his

substantial rights with respect to his arguments concerning actual bias or prejudice on the part of the sentencing judge.

### b. MCR 2.003(C)(1)(b)

Nassar next argues that the sentencing judge should have been disqualified from hearing his motion for resentencing because there was an appearance of impropriety as described in MCR 2.003(C)(1)(b). We disagree.

As already stated, MCR 2.003(C)(1)(b) provides, in relevant part:

> The judge, based on objective and reasonable perceptions, has either (*i*) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v [AT] Massey [Coal Co, Inc]*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), *or* (*ii*) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. [Emphasis added.][9]

Similar to the reasons set forth above in regard to the issue of actual bias and/or prejudice, we conclude that the sentencing judge's comments at sentencing did not demonstrate "a serious risk of actual bias impacting [Nassar's] due process rights[.]" See MCR 2.003(C)(1)(b). The instances in which the judge spoke in an imprudent, unwise, and inappropriate manner during the lengthy sentencing proceeding did not, when viewed in the context of the entire sentencing hearing, create a reasonable perception that the judge's integrity, impartiality, or competence was impaired. See *Kern*, 320 Mich App at 232.

Furthermore, Nassar has failed to establish that his substantial rights were affected by the alleged "serious risk of actual bias," i.e., that his due process rights were violated. Again, "disqualification for bias or prejudice is only constitutionally required in the most extreme cases." *Cain*, 451 Mich at 498. "[T]he burden is heavy for a disqualification motion grounded on the constitutional right to an unbiased and impartial tribunal." *Id*. at 498 n 33. Nonetheless, "[t]here are circumstances in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton*, 556 US at 877 (quotation marks and citation omitted). The extreme circumstances in which recusal is constitutionally required typically involve situations in which a judge has a financial interest in the outcome or where a judge has participated in an earlier proceeding of the case as an accuser, investigator, fact-finder, or initial decisionmaker. *Id*. at 876-877, 880; *Cain*, 451 Mich at 498. In this case, the sentencing judge had no financial interest in the outcome, nor did the judge participate in an earlier proceeding of the case in any capacity. In short, Nassar has failed to identify any extreme circumstance or any interest the judge has in the outcome of his case that requires her

---

[9] Court rules are interpreted according to their plain meaning. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). " '[O]r' is a disjunctive term, indicating a choice between two alternatives[.]" *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 148; 783 NW2d 133 (2010).

recusal as a constitutional matter. Moreover, as already discussed, the judge complied with the sentencing agreement and identified valid sentencing considerations based on information obtained in the judicial proceedings when fashioning Nassar's sentence.[10] Therefore, Nassar has failed to establish plain error that affected his substantial rights with respect to his argument that there was "a serious risk of actual bias impacting [his] due process rights."

Next, Nassar argues that the sentencing judge violated Canon 2, as well as several other judicial canons. However, MCR 2.003(C)(1) only includes Canon 2 as a possible ground for disqualification. Further, Nassar fails to cite authority or present argument establishing that disqualification is warranted on the basis of violations of other judicial canons. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Because Nassar has failed to provide adequate briefing, he has abandoned this part of the issue. *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004).

Even so, we note that, in the analogous federal context, it has been noted that "not every violation of the Code of Conduct [for United States Judges] creates an appearance of bias requiring recusal . . . ." *United States v Sierra Pacific Indus, Inc*, 862 F3d 1157, 1175 (CA 9, 2017).[11] Aside from reviewing a decision on a motion for judicial disqualification under MCR 2.003, this Court is not the appropriate venue to assert the violation of a judicial canon.

Nonetheless, even when reviewing Nassar's argument, we discern no support for his contentions that the sentencing judge violated Canon 2, Canon 3(A)(1), and Canon 4, and that the judge created an appearance of impropriety in doing so. Nassar argues that, because the judge was swayed by public clamor and partisan interests, "she used the bench as a stage from which to push her own agenda for particular legislation[.]" To support this argument, Nassar notes instances at sentencing in which the judge referred vaguely to possible legislation or to legislators. Contrary to Nassar's argument, however, the judge did not use the bench as a stage to promote the judge's own agenda for particular legislation. Rather, the judge merely offered affirming words to victims who had just spoken and encouraged the speakers to use their voices to call for unspecified changes in the law. It appears that the judge was referring generally to a public reckoning regarding sexual

---

[10] Although Nassar's argument is not entirely clear, Nassar seems to suggest that the sentencing judge created an appearance of impropriety by allowing all of the victims, including victims of offenses other than the offenses to which Nassar pleaded guilty, to speak at sentencing. Nassar says that it was "irregular" to allow all of the victims to speak. However, Nassar cites no authority to support this contention, and he did not object on this basis below. Moreover, as part of his plea agreement, Nassar agreed to allow all of the victims to speak at sentencing. "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *People v Siterlet*, 299 Mich App 180, 191; 829 NW2d 285 (2012), aff'd in part, vacated in part on other grounds 495 Mich 919 (2013) (quotation marks and citation omitted).

[11] "Lower federal court decisions are not binding on this Court, but may be considered on the basis of their persuasive analysis." *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013).

assault. Additionally, although the judge noted that the world was "watching" and that she had seen posts on social media about the case, Nassar's cases were highly publicized due to the heinous nature of the case, not because of anything the judge said or did. Because the judge was merely stating facts that were obvious, we conclude that there was nothing about her comments that created an appearance of impropriety.

Nassar further contends that the sentencing judge violated Canon 2 and Canon 3(A)(3), which provides, "A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and should require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control." Nassar argues that the judge failed to rebuke members of the gallery who interjected when speakers or the judge made remarks. Nassar also argues that the judge failed to stop victims from denigrating and disparaging his attorneys, who were harassed and subjected to death threats. However, upon review of the record, Nassar's argument fails. At the hearing on the motion for disqualification, the judge denied hearing the interjections by members of the gallery and offered an explanation as to why she did not hear the interjections. Specifically, she stated as follows:

> Somewhere in one of your briefs you also talk about people calling out things and I did nothing. Well, please, depose my court reporter and my law clerk. They can tell you that they both have better hearing than me. My court reporter is trained to pick up things people say back there. I don't hear them. I'm always in the zone listening to the people in front of me, so I don't know what was said back there. I didn't hear it. Maybe the media picked it up. She certainly picked it up. I didn't hear anything untoward, anything that I thought was sanctionable because I was focused on what I should have been.

Moreover, the sentencing judge did, on a couple of occasions, instruct people in the gallery to be quiet or to calm down. When the judge issued Nassar's sentence, the judge indicated "I need everyone to be quiet. I still have contempt powers. I told you, I'm not nice." As for the alleged denigration of Nassar's attorneys, the judge made comments strongly supporting Nassar's attorneys. The judge explained that Nassar has a right to counsel, that Nassar's attorneys have a difficult job to do, and that the attorneys should not be harassed or subjected to threats. The judge's handling of these matters was appropriate, and there was no appearance of impropriety.

Nassar also appears to argue that Canon 2 was violated because the sentencing judge permitted the individuals who spoke at the sentencing hearing to disparage him and wish harm upon him. However, as part of the plea agreement, Nassar agreed that the victims (or their parents or representatives) would be permitted to speak at sentencing. Although some of the statements that were made at sentencing were indeed harsh and unforgiving, we fail to see how the statements could be attributed to the sentencing judge.

In sum, with respect to Nassar's arguments that the sentencing judge violated Canon 2 and several other judicial canons, we conclude that, when viewed in the context of the entire sentencing hearing, the judge's statements and conduct did not create a reasonable perception that her integrity, impartiality, or competence was impaired. See *Kern*, 320 Mich App at 232. Consequently, we can discern no plain error. Additionally, for the reasons already discussed, we conclude that any error did not affect Nassar's substantial rights.

## 3. POSTSENTENCING ACTIVITIES AND COMMENTS

Next, Nassar argues that the sentencing judge should have been disqualified from deciding his motion for resentencing because the judge was biased and that there was an appearance of impropriety as a result of her postsentencing behavior and statements, including the judge's social media activity, statements to the press, and public appearances.

In analyzing these arguments, we will not consider materials that Nassar has provided on appeal that are not part of the lower court record. "This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002); see also *People v Shively*, 230 Mich App 626, 628 n 1; 584 NW2d 740 (1998) (declining to consider an affidavit attached to the defendant's appellate brief because the affidavit was not part of the lower court record). Moreover, the additional materials Nassar has provided on appeal concern actions taken or statements made *after* the decision under review. Indeed, the denial of the motion to disqualify the sentencing judge cannot be deemed erroneous on the basis of materials that did not yet exist.

We first address the preserved arguments relating to the sentencing judge's postsentencing activities, which consist of the judge's attendance at the ESPY awards, the judge's posting on social media an article relating to her attendance at the ESPY awards, and the judge's posting on social media an article concerning a documentary about Nassar. We fail to see how the judge's attendance at the ESPY awards demonstrates actual bias or the appearance of impropriety. As the judge noted at the hearing on Nassar's motion for disqualification, she was accompanied by a family member to the awards. The judge "did not attend with police, prosecutors, or anybody else[.]" There is also no indication that the judge spoke with the media or received any sort of award.

With respect to the sentencing judge's decision to post on social media about her attendance at the event, the judge included photographs of the event and thanked "[s]ister [s]urvivors, ESPN, & ESPYS" "for including" her "in an outstanding event to Honor ALL Sister Survivors for their Courage!" The judge also commented that the "Arthur Ashe Courage Award" was not only earned but also deserved "by each and every one of them on stage and off stage, wherever they are situated." Thus, the social media post concerning the ESPY awards demonstrated support for victims of sexual violence and, more specifically, Nassar's victims. At the time of the posting, Nassar had already pleaded guilty to seven crimes involving penetration of minors and the lengthy sentencing hearing, at which the victims had presented their impact statements, had already taken place. He had also been sentenced to the equivalent of 60 years' imprisonment for additional crimes against children. Therefore, the judge's posting essentially constituted a commentary on matters that were not in dispute, i.e., that Nassar had victimized female athletes and that Nassar's victims were receiving accolades for their decisions to come forward. Although unwise considering that the judge had presided over Nassar's lower court proceedings, we conclude that the judge's decision to attend the event and the social media post that followed did not rise to the level of actual bias, did not demonstrate "a serious risk of actual bias impacting . . . due process rights," and did not violate the judicial canons already discussed. The same is true of the judge's post on social media concerning an upcoming documentary about Nassar, which merely constituted a link to an article discussing the documentary. Consequently,

we conclude that Nassar failed to overcome the strong presumption of impartiality and that the decision to deny Nassar's motion did not amount to an abuse of discretion.

With respect to Nassar's unpreserved arguments, we conclude that he has failed to establish plain error. Most of the social media posts, public appearances, and statements to the press on which Nassar relies essentially amounted to expressions of support for the victims. Such expressions do not establish disqualifying bias or an appearance of impropriety. The victims are not parties to this case. At the hearing on the motion for disqualification, the sentencing judge stated that any comments that were made after sentencing were part of an effort to speak out against sexual assault and bullying. The judge indicated that she has historically advocated for such causes and that she has always "been an advocate for justice and for the right side." The court's expression of support for sexual assault victims did not indicate bias or an inability to impartially hear the motion for resentencing. As noted by the chief judge, the sentencing judge's words of affirmance for the victims were basically meant to provide "emotional restitution" for the victims.

Also, it was Nassar—an admitted serial sex offender who used his status as a physician to access and violate his many young victims—who was the source of the intense media publicity surrounding this case. At the hearing on the motion for disqualification, the sentencing judge denied speaking to the press, despite having received multiple requests for interviews. But even if the April 24, 2018 Detroit News article is accurate, the judge's statement did not require her recusal. The article quoted the judge as saying, "I'm not fair and impartial. The case is over[.] No judge is fair and impartial (after the verdict). That's for before the sentencing." The judge should have made the point more artfully, but it appears that she was essentially noting that a judge's role at sentencing, after a defendant's guilt has been established, differs from a judge's role at a trial. The judge's overall point was, in fact, accurate. As already stated, once a defendant has been adjudged guilty in a fair proceeding, "the presumption of innocence disappears." *Herrera*, 506 US at 399. A trial judge "may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person." *Liteky*, 510 US at 550-551. We conclude that the judge's imperfect articulation of these principles does not establish bias or an appearance of impropriety.

The sentencing judge's apparent use of a laughing emoji is a closer call, however. In this situation, the judge used the emoji in response to a Facebook comment expressing disregard for whether the judge's sentencing of Nassar was within the judge's judicial right. Judges are required to uphold the rights of an accused; therefore, expressing disregard for the rights of a defendant, particularly a defendant recently sentenced by the court, risks undermining public confidence in the integrity and impartiality of the judiciary and brings into question whether defendant's due process rights were violated. It is also ill-advised for judges to comment on cases over which they preside because, as this appeal demonstrates, a case is not "over" after sentencing. However, in this case we note that the judge stated that she had posted the emoji in error. Specifically, at Nassar's hearing to disqualify her, the judge contended that the emoji was intended to be used in response to a different comment that did not pertain to this case, but was mistakenly attached to a

post concerning this case.[12]  Given the judge's explanation at the motion hearing, there is insufficient reason to conclude that the laughing emoji was used to comment on this case.  We also note that the chief judge reached a similar conclusion: "[t]here is no picture, tweet, like, share, television show, book signing or t-shirt that changes the dynamics of the case to the extent that it would affect the judge's future rulings."  Therefore, Nassar has failed to establish plain error with respect to his unpreserved arguments regarding the sentencing judge's postsentencing activities.

Additionally, we conclude that Nassar has failed to establish that his substantial rights were affected by the sentencing judge's postsentencing activities.  In part, Nassar moved for resentencing based on arguments that the judge demonstrated bias and that there was an appearance of impartiality during and after the sentencing proceeding.  However, for the reasons already discussed, Nassar's arguments are without merit, and the judge fashioned Nassar's sentences on the basis of valid sentencing considerations.  Consequently, Nassar cannot establish plain error affecting his substantial rights with respect to the judge's postsentencing activities.

## D.  CONCLUSION

We conclude that the denial of Nassar's motion to disqualify the sentencing judge from hearing Nassar's motion for resentencing was not erroneous.  Because we conclude that Nassar is not entitled to resentencing, we need not address his argument that he is entitled to be resentenced before a different judge.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael F. Gadola

---

[12] At the motion hearing, the sentencing judge indicated that the laughing emoji was in response to a comment indicating that the judge should replace Justice Ruth Bader Ginsburg on the United States Supreme Court if Justice Ginsburg retired, rather than in response to the separate comment about Nassar.